THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DEBRA K. JOHNIGK, Defendant-Appellant.

Third District   No. 82—72

Opinion filed December 30, 1982.

942

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

At about 9:25 p.m. on the night of August 12, 1981, Debra Johnigk was driving her van westbound in the center lane of a three lane roadway in East Peoria, Illinois, when she collided with an east-

bound motorcycle operated by Milan M. Gnehm. At the place where the collision occurred, two lanes of the highway were designated eastbound and only one lane was westbound; thus, the eastbound motorcycle had the right-of-way in the center lane. As a result of the accident, Gnehm died, and Johnigk was subsequently indicted by a Tazewell County grand jury upon charges of reckless homicide, driving under the influence of intoxicating liquor, and improper lane usage. Following a jury trial, defendant was found guilty on all charges. The trial court entered judgment on the offenses of reckless homicide and driving while under the influence of intoxicating liquor. Defendant was sentenced to six months in the county jail and 30 months' probation on the reckless homicide conviction along with a concurrent sentence of one year probation on the driving while under the influence of intoxicating liquor conviction. She was also fined $2,000 and costs and ordered to pay the medical and funeral expenses of the victim. Defendant has appealed from both convictions. We affirm.

According to evidence presented by the State, the first two officers at the scene of the accident were of the opinion that defendant was intoxicated after observing her and smelling alcohol on her breath. She was given a breathalyzer test at about 11 p.m. and then was taken to St. Francis Hospital in Peoria where she consented to a blood test for alcohol content in the blood. The blood sample was drawn at 12:05 a.m. on August 13, 1981, and was tested by Dr. Richard Meyers, director of clinical biochemistry and toxicology at the hospital. He testified that the blood alcohol level was .18% and that at that level approximately 86% of the people tested would suffer from "frank intoxication." He also testified as to the rate of dissipation of alcohol in the body and then, in answer to a hypothetical question, indicated that on the basis of the test, in his opinion defendant's blood alcohol level would have been .217% at 9:30 p.m. Defendant objected that there was not a sufficient foundation for his hypothetical answer, and the trial court overruled the objection.

On appeal defendant insists that there should have been a foundation based upon the number of drinks consumed by defendant before the hypothetical question was allowed. We have reviewed the record, and we conclude, first, that Dr. Meyers' expertise as a specialist in testing blood alcohol levels was well-established and, second, that he was merely asked to give an opinion based upon his scientific knowledge and the results of the blood test. The question and answer were proper. Additional facts relating to the number of drinks consumed by defendant would go to the weight of his opinion evidence, not to its admissibility. Under section 11—501(c) of the Illinois Vehicle

Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(c)), evidence of the amount of alcohol in the blood "at the time of the act alleged as shown by a chemical analysis" of the blood is admissible if the test is performed according to specified uniform standards. Since it is unlikely that a blood sample would be drawn at the exact time of an accident, by implication the statute permits the kind of testimony which was received here—estimating the blood alcohol level at a time earlier than the sample was drawn.

In an effort to impeach Dr. Meyers' testimony, defendant attempted to cross-examine him concerning the results of two breathalyzer tests taken at 10:15 and 11:17 p.m. which indicated that defendant's blood alcohol level was .14 and .16, respectively. These levels were inconsistent with Dr. Meyers' testimony that in his opinion defendant's level would have declined from .217 at 9:30 p.m. to .18 at 12:05 a.m. After Dr. Meyers indicated that he was not an expert as to breathalyzers and that he could not say how those tests compare with the blood tests, the trial court sustained the State's objection to further questions. Defendant argues upon appeal that she should have been allowed to cross-examine Dr. Meyers more extensively as to the breathalyzer tests and that as a result of the improper curtailment on cross, she was forced to introduce the results of those tests as a part of her defense.

Generally the scope of cross-examination rests within the discretion of the trial court. Although we acknowledge that it is proper to test the accuracy, skill and learning of an expert witness, we find that defendant did that here. We do not see how defendant was harmed by the rulings of the trial court since the results of both tests showed that she was intoxicated in any event. Dr. Meyers stated on rebuttal that the test of a blood sample is more accurate than the breath test. It was the task of the jury to weigh the scientific evidence along with defendant's own testimony that she had consumed two beers and three rum-and-coke drinks between 8 and 9 p.m. prior to the accident.

Defendant also contends that the evidence was insufficient to prove her guilt beyond a reasonable doubt as to both convictions. It was undisputed that the motorcycle operated by the victim had the right-of-way in the center lane of the highway where the collision occurred and that the motorcycle headlight was on prior to the accident. Thus the most reasonable inference is that defendant failed to keep a proper lookout and failed to yield the right-of-way.

It has been held that a person acts recklessly when he consciously disregards a substantial and unjustifiable risk that his acts are likely to cause death or great bodily harm and when such disre-

gard is a gross deviation from the standard of care which a reasonable person would use. (*People v. Bonzi* (1978), 65 Ill. App. 3d 927, 382 N.E.2d 1300.) Under that standard, we believe the jury was correct in finding that defendant's conduct here was reckless beyond a reasonable doubt and, therefore, that she was guilty of reckless homicide.

■ As to the conviction for operating a motor vehicle while under the influence of intoxicating liquor, we think the evidence of intoxication indicates that the conviction should be sustained. In addition to the expert testimony of Dr. Meyers, the police officers at the scene testified as to their opinion that defendant was intoxicated. That testimony alone was sufficient to support the conviction. (*People v. Winfield* (1975), 30 Ill. App. 3d 668, 332 N.E.2d 634.) Furthermore, defendant herself testified that she had consumed drinks containing at least five ounces of alcohol shortly before the accident, and she introduced the breathalyzer tests showing her alcohol level to be above .10, thereby invoking the statutory presumption of intoxication. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(c)(3).) On the basis of this evidence, it would have been a miscarriage of justice to have reached any verdict other than "Guilty."

Accordingly, we affirm the judgment of the circuit court of Tazewell County.

Affirmed.

STOUDER and SCOTT, JJ., concur.