MAUREEN VON SEGGREN, Plaintiff-Appellee, v. B. D. SMITH, Indiv. and d/b/a Wirtz-Roche-Smith Funeral Home, Defendant-Appellant and Counterdefendant (Nancy Sprowls *et al.*, Plaintiffs; Robert Troost, Indiv. and d/b/a Riverhill Memorial Park, Defendant and Counterplaintiff).

Second District   No. 2—85—0797

Opinion filed January 13, 1987.

Robert M. Hansen and T. Donald Henson, both of Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle, for appellant.

Mark A. Schindler and Peter F. Ferracuti, both of Peter F. Farracuti, P.C., of Ottawa, for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendant, B. D. Smith, individually and d/b/a Wirtz-Roche-Smith Funeral Home, appeals from a judgment of the circuit court of De Kalb County following a jury trial awarding plaintiff, Maureen Von Seggren, $50,000 damages for breach of contract. The case arose out of the handling of the cremains (cremated remains) of plaintiff's mother by defendant, with plaintiff contending, and defendant denying, that defendant returned to plaintiff's family the cremains of someone (Edith Holderness Willey) other than her mother (Earlene Kempson). Defendant raises two issues on appeal, contending (1) that the trial court erred in admitting into evidence testimony about defendant's handling of the remains of someone other than plaintiff's mother and (2) that the jury's verdict was excessive. We affirm.

■ Defendant first argues that the trial court erroneously permitted testimony from four witnesses—Warren Willey, Edith Willey (Warren's wife), Peter Wolters, and John Hammes—concerning defendant's handling of the cremains of Mr. Willey's grandfather and grandmother (Edith Holderness Willey). Defendant maintains that "[t]his testimony was totally irrelevant and immaterial to the issue presented, and its injection into the lawsuit highly prejudicial." The issue raised was not properly preserved and so has been waived.

The testimony of the Willeys was about their dealings with defendant regarding the disposition of the remains of Mr. Willey's grandparents. Wolters and Hammes were associated with the Oakwood Cemetery, and their testimony concerned whether the cemetery association had been paid a fee for burying the cremains of Mr. Willey's grandparents, whether Hammes as cemetery sexton had buried those cremains, and whether the cemetery's records showed a burial for the Willeys.

The testimony of Wolters and Hammes was not objected to before, during, or after trial. Defendant's claim that the testimony of these two witnesses should not have been admitted has accordingly

been waived. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500-01, 475 N.E.2d 872, 879.

■ Insofar as the issue concerns the testimony of Warren and Edith Willey, it is necessary to determine what was raised in the trial court by way of contemporaneous objection and post-trial motion. To be preserved, the issue raised must have been specifically raised both by timely objection at trial and in defendant's post-trial motion. *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 181, 415 N.E.2d 1028, 1029-30; *Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 969, 973, 242 N.E.2d 1279, 1284, 1286-87.

■ The relevant allegations of defendant's post-trial motion were:

"8. The Court erred in refusing to grant defendant's Motion In Limine which is in words and figures as follows;

\*\*\* that the parties be instructed not to inform the jury at any time during trial any of the following:

1. The Willey family's dissatisfaction with Mr. B. D. Smith's handling of the cremains of Mr. and Mrs. Willey.

2. \*\*\*

9. The Court erred in allowing plaintiff's counsel to question Edith Willey or Warren Willey about their dissatisfaction with Mr. B. D. Smith's handling of the cremated remains of Mr. Willey's ancestors.

10. The questioning of the Willeys did nothing but inflame the passion and prejudice of the jury."

In these allegations of defendant's post-trial motion, he preserved only a claim that testimony by the Willeys about their dissatisfaction with defendant's handling of the cremains of Warren Willey's grandparents should not have been admitted and not the broader contention made on appeal that testimony concerning the handling of the cremains should not have been admitted. To the extent the issue raised on appeal is broader than that raised in the post-trial motion, it has been waived.

■ Moreover, at no time during the testimony of Warren and Edith Willey did defendant ever object to testimony that the Willeys were dissatisfied with defendant's handling of Mr. Willey's grandparents' cremains. In fact, defendant objected only once during their testimony and then it was to a question of Edith about the handling of the cremains and not about dissatisfaction with that handling. Therefore, because no contemporaneous objection was made to any testimony about dissatisfaction with defendant's handling of the cremains, the issue raised in the post-trial motion was also waived. There is accordingly no portion of the first issue raised by defendant on appeal

which has been properly preserved for review, so we decline to consider it.

We would note that plaintiff's theory of the case was that defendant had given her a canister containing the cremains of Edith Holderness Willey (Warren Willey's grandmother) instead of the cremains of plaintiff's mother, Earlene Kempson, which had been buried in a common grave at Riverhill Memorial Park. Defendant's theory of the case was that he had his son transfer Mrs. Willey's cremains into a canister already containing her husband's cremains, had then had his son transfer Mrs. Kempson's cremains into the canister formerly occupied by Mrs. Willey's cremains, and had given plaintiff's family this canister containing the cremains of their mother. Given these conflicting theories of the case, and the other factual disputes in the case, it is apparent that much, if not all, of the evidence concerning the handling and disposition of the Willey cremains was not only relevant, but of great value to the triers of fact in ascertaining what had actually occurred. Therefore, although we do not decide the issue raised because it was waived, it seems unlikely that it would have been erroneous for the trial court to admit testimony of the sort defendant complains of on appeal.

■ Defendant's second issue involves the amount of the verdict. The issue raised is a limited one. Defendant does not challenge the availability of damages for mental anguish for a breach of contract. We express here no view on that matter. (See *Courtney v. St. Joseph's Hospital* (1986), 149 Ill. App. 3d 397, 500 N.E.2d 703 ("Illinois does not recognize a cause of action for emotional distress arising from the negligent mishandling of a corpse"); *Maere v. Churchill* (1983), 116 Ill. App. 3d 939, 944, 452 N.E.2d 694, 697 (damages for breach of contract will not be given for mental suffering, except where breach was wanton or reckless and caused bodily harm or where defendant had reason to know, when contract was made, that its breach would cause mental suffering for reasons other than mere pecuniary loss).) Rather, defendant contends that the verdict of $50,000 is excessive and requests a remittitur to $5,000.

The evidence of plaintiff's damages came entirely from the testimony of plaintiff and her husband. Although plaintiff consulted with her pastor, she never saw a doctor, psychiatrist, psychologist, or counsellor about her mental anguish over what had happened to her mother's cremains. With respect to this matter, plaintiff summarizes the evidence as follows:

> "The Plaintiff and her husband testified that when the Plaintiff learned she had been given the wrong person's ashes, she

was shocked, stunned, extremely upset and couldn't believe what she was seeing. [Record citation.] The Plaintiff spent most of the trip home from Indiana on the following day lying in the back seat of the car crying. She was very concerned about recovering her mother's ashes. [Record citation.]

     \*\*\* [T]he fact that the Plaintiff was unable to carry out her parent's wishes has been a source of grief to her for five years. It still upsets her a great deal. [Record citation.] \*\*\* [T]he Plaintiff must relive this upsetting experience every time she sees white ashes or her father's favorite wild flower. Instead of it being a pleasant memory, it is a source of grief. She is also reminded of her grief on Mother's Days and birthdays. [Record citation.]

     Physically, the Plaintiff has experienced a loss of appetite and has had difficulty sleeping. Many times she lies awake at night thinking about what has happened. When she dwells on these thoughts she often gets headaches for which she takes aspirin. [Record citation.]

     For a long time, the Plaintiff could not talk about the situation without crying. The Plaintiff's husband testified that his wife's entire outlook on life has changed and she did not seem to care about anything."

Caution is appropriate in approaching the issue raised since, in the determination of the amount of damages necessary to compensate a plaintiff for a particular mental or emotional trauma, there are no firm guidelines. However, this does not mean that we should not review the jury's award. (See *House v. Stocker* (1975), 34 Ill. App. 3d 740, 745-46, 340 N.E.2d 563, 567.) We will overturn the verdict of a jury if

     "the award is so excessive as to indicate that the jury was moved by passion or prejudice [citation], or \*\*\* [if] the amount of the verdict does not fall within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. [Citation.]" *(Mote v. Montgomery Ward & Co.* (1984), 125 Ill. App. 3d 839, 847, 466 N.E.2d 593, 598.)

These necessarily vague standards are all we have to guide us in deciding this issue since the facts of the case at bar with respect to damages differ significantly from those of the cases the parties have cited as similar in their arguments.

     ■ We are not persuaded by defendant's speculation that the award resulted from the jury's consideration of prejudicial evidence, since that evidence, as we noted earlier, was relevant to the issues in

the case and since it is impossible to know what the jury found persuasive when it decided to award $50,000. On the facts of this case, the $50,000 verdict is not so excessive as to indicate that the jury was moved by passion or prejudice, falls within the flexible limits of fair and reasonable compensation, and is not so large that it shocks our judicial conscience. The verdict was therefore not excessive.

The judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.