TOMAS A. CUELLAR, Plaintiff-Appellant, v. ROBERT W. HOUT, Defendant (Winfield Township *et al.*, Defendants-Appellees).

Second District   No. 2—87—0414

Opinion filed April 15, 1988.

Charles F. Haverty III and Wayne M. Jensen, both of Brady, McQueen, Martin, Collins & Jensen, of Elgin (Alfred Y. Kirkland, Jr., of counsel), for appellant.

Stephen R. Swofford, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and Thomas A. Brabec, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Wheaton (Lynn D. Dowd, of counsel), for appellees.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Tomas A. Cuellar, brought an action in the circuit court of Du Page County seeking damages for personal injuries he alleged resulted from the negligence of Roger W. Hout (Hout), Winfield Township (the township), and Winfield Township Highway Commissioner Arthur J. Lootens (Lootens). Prior to trial, Hout was dismissed as a defendant pursuant to a settlement agreement with plaintiff. Plaintiff's claim against the township and Lootens (defendants) was tried by a jury, which returned a verdict for defendants and against plaintiff. In addition, the jury, responding to a special interrogatory, found "the negligence of the defendants [was not] a proximate cause of the injury to Tomas A. Cuellar at the time and place alleged." The circuit court denied plaintiff's post-trial motion and entered judgment on the jury's verdict. Plaintiff appeals from this judgment.

The accident on which plaintiff's action was based occurred on

June 26, 1983. Plaintiff was riding a motorcycle heading north on Ridgeland Street. At the same time Hout was driving a van west on National Street. At about 7 p.m. at the intersection of Ridgeland and National in Winfield Township, plaintiff collided with the driver's side of Hout's van. Although they did not witness the collision, four witnesses saw plaintiff riding immediately before the accident. One testified that plaintiff was going about 30 miles per hour, and the other three testified that he was going over 50 miles per hour. Plaintiff, who suffered brain damage from the accident (having been comatose for several days afterward), had incomplete recollection of the period just prior to the accident and did not remember how fast he had been travelling. Hout was the only witness to testify as to his driving prior to the collision. His unrebutted testimony was that he was driving about 15 to 20 miles per hour at 7:10 p.m. Before he reached the intersection of National and Ridgeland, Hout placed his foot on the brake because he would have to yield the right-of-way to northbound traffic on Ridgeland. As he approached the intersection, Hout looked to his left and then to his right. Hout looked to his left again as he entered the intersection, and then he looked straight ahead. He had seen no vehicles approaching the intersection. When Hout was 10 to 15 feet into the intersection he heard a motorcycle engine, and the collision occurred at almost the same instant. It was undisputed that drivers' views were obstructed to some extent near the intersection (the extent, however, being much in dispute) and that there were no regulatory or warning signs on either street near the intersection (although the need for such signs was in dispute).

Plaintiff was taken to Central Du Page Hospital. At some time between 8:55 p.m. and 9:17 p.m. a blood sample was drawn to perform a blood-alcohol test. The test indicated a blood-alcohol level of .064.

Defendants presented the testimony of James O'Donnell, who was a pharmacologist, pharmacist and nutritionist, as to whether plaintiff had been intoxicated at the time of the accident. O'Donnell testified that "retrograde extrapolation" is accepted in the pharmacological community. Alcohol is eliminated from the body at an average rate of .015 to .02 per hour. O'Donnell used the .02-per-hour elimination rate on the basis that it was more likely correct due to elevated levels of certain enzymes in the blood indicating how plaintiff's liver was functioning. Assuming the .02-per-hour elimination rate, and assuming that during the entire period after the accident plaintiff was in the elimination and not the absorption phase for the alcohol he had consumed, retrograde extrapolation indicated that plaintiff had a blood-alcohol level of .104 at the time of the accident. O'Donnell was of the

opinion that plaintiff had been intoxicated at the time of the accident.

Austin Gibbons, M.D., a pathologist (who was also an attorney), testified as an expert for plaintiff. He testified that retrograde extrapolation of a blood-alcohol level from a single measurement could not be relied upon. From that number it is impossible to determine whether the person is still in the absorption phase or, if in the elimination phase, when the level had peaked. Trauma, the type of beverage consumed, and the type of food consumed could affect the absorption rate and so the validity of an extrapolation. Gibbons also testified that the enzymes O'Donnell had found significantly high were not much above normal levels and would be expected to be at higher than average levels for a period following trauma.

Plaintiff raises the following issues:

"1. Whether the trial court ruled correctly in allowing defendants to place evidence of plaintiff's drinking before the jury.

2. Whether the trial court ruled correctly in allowing opinion evidence that plaintiff was intoxicated by one who did not observe plaintiff, but who based the opinion on mathematical extrapolations and a statutory presumption.

3. Whether the trial court ruled correctly in excluding evidence of defendants' admission [that the intersection should have signs]."

We affirm.

Plaintiff's first two issues are related. We will, therefore, follow the lead of the parties and discuss them together.

Under the first two issues, plaintiff challenges the admissibility of essentially three types of testimony. The testimony challenged concerned: (1) plaintiff's drinking of beer prior to the accident; (2) results of the blood-alcohol test showing a .064 alcohol level in plaintiff's blood; and (3) retrograde extrapolation from the blood-alcohol test results leading O'Donnell to the opinions that (a) plaintiff's blood-alcohol level was .104 at the time of the accident and (b) plaintiff was intoxicated at the time of the accident. Plaintiff's challenges to the admissibility of the blood-alcohol test and O'Donnell's testimony on retrograde extrapolation, and his opinions, will be considered first.

■ Since this is not a prosecution for driving under the influence and section 11—501.2(a) of the Illinois Vehicle Code does not apply, the ordinary standards of admissibility apply to the evidence of the blood-alcohol test. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a); *People v. Murphy* (1985), 108 Ill. 2d 228, 234, 483 N.E.2d 1288, 1290.) Plaintiff makes two arguments in support of his claim that the blood-

alcohol test results were inadmissible.

■ First, plaintiff contends that the results were inadmissible because "[t]he test was not given 'at the time' of the occurrence (Ill. Rev. Stat. ch. 95½, par. 11—501.2(a)), but, rather, 1.67 to 2.03 hours after the collision." Although plaintiff cites the inapplicable section 11—501.2(a), we will consider this contention under similar language found in the applicable section 11—501.2(b). (Compare Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a) with par. 11—501.2(b).) Section 11—501.2(b) refers to "the concentration of alcohol in the person's blood or breath at the time alleged as shown by analysis of the person's blood, urine, breath, or other bodily substance." (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(b).) Contrary to plaintiff's contention, the language quoted does not require that the test be "given 'at the time' of the occurrence." Rather, the statute requires that the concentration of alcohol "at the time alleged" be "shown by analysis of the person's blood, urine, breath, or other bodily substance" without reference to when the substance analyzed is taken from the person. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(b).) It is, therefore, broad enough to allow the admission of evidence of the analysis of blood, urine, breath, or some other bodily substance at a time subsequent to the time alleged when that analysis can show, by use of retrograde extrapolation or some other method, the concentration of alcohol in the person's blood or breath at the time alleged. We note that in virtually every case there will be some lapse of time between the time alleged and the performance of the analysis of the person's blood, urine, breath, or other bodily substance so that in virtually every case a degree of extrapolation from the analysis will be required. (*People v. Johnigk* (1982), 111 Ill. App. 3d 941, 943-44, 444 N.E.2d 739, 741.) Thus, our construction of the statute to permit such extrapolation testimony is also necessary if the statute is to have any effect at all. *People v. Johnigk* (1982), 111 Ill. App. 3d 941, 944, 444 N.E.2d 739, 741 ("Since it is unlikely that a blood sample would be drawn at the exact time of an accident, by implication the statute permits the kind of testimony which was received here—estimating the blood-alcohol level at a time earlier than [when] the sample was drawn").

Plaintiff attempts to distinguish *Johnigk* on the basis that the actual blood-alcohol level found was in excess of .10 in *Johnigk* and was less than .10 in the case at bar. (See Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(b).) This distinction is irrelevant since (1) it is not the blood-alcohol level at the time of the test, but rather that at the time alleged, that is significant and (2) the distinction does not concern in any way the admissibility of testimony extrapolating from the actual

test results to an earlier time.

■■ The second basis on which plaintiff claims the blood-alcohol results were inadmissible is:

"The actual test result of .064 does not achieve a level which has evidentiary value, by statute or otherwise. The statute governing such tests provides that a test result of .05 to .10 creates no presumption of intoxication but can only be considered if there is 'other competent evidence' of intoxication, as required by Ill. Rev. Stat., ch. 95½, 11—501.2(b)."

This is incorrect in two respects. First, the statute does not say that a blood-alcohol level between .05 and .10 "can only be considered *if* there is 'other competent evidence' of intoxication." (Emphasis added.) Rather, it says "such fact may be considered with other competent evidence in determining whether the person was under the influence of alcohol." (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(b)(2).) Second, as noted previously, it is not the blood-alcohol level at the time blood is drawn that is significant but rather the blood-alcohol level at the time alleged. Therefore, to the extent the level might affect admissibility of the test results, it is the level at the time alleged that must be considered. In the case at bar, although the jury could easily have concluded otherwise on the evidence before it, there was evidence supportive of a .104 blood-alcohol level at the time of the accident. That was sufficient to make the test results admissible, it being for the jury to determine what the actual level at the time alleged was.

■ O'Donnell expressed the opinions that the blood-alcohol level of plaintiff at the time of the accident was .104 and that plaintiff was intoxicated at the time of the accident. To the extent that plaintiff makes any argument that O'Donnell's opinion as to the blood-alcohol level at the time of the accident was inadmissible, that argument has already been addressed in the discussion of the admissibility of the blood-alcohol test results. Plaintiff makes a several-page argument that O'Donnell's opinion that plaintiff was intoxicated was inadmissible, essentially pointing out several facts tending to impeach that opinion. Plaintiff has cited no authority in his brief in support of this contention and so has waived the issue. 107 Ill. 2d R. 341(e)(7); *In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 688-89, 474 N.E.2d 911, 914.

■■ ■ We note that plaintiff's argument on this issue is that O'Donnell's opinion was based upon incorrect facts. Specifically, plaintiff claims that O'Donnell was testifying about a "hypothetical" or "average" individual rather than defendant, and that he based his

opinion on facts (that plaintiff had an empty stomach, was at rest, drank noncarbonated alcoholic beverages, and had not undergone trauma) not supported by the evidence. Although there was some mention of "average" persons in his testimony, O'Donnell did take into account facts specific to plaintiff (*e.g.*, the elevated enzyme levels) in coming to his opinion. Also, some of the facts plaintiff cites as significant appear to affect primarily absorption and so would be of little relevance if the jury concluded that O'Donnell was correct in assuming plaintiff was in the elimination phase throughout the period between the accident and the drawing of blood. We believe that all of the facts cited by plaintiff, which were presented and ably argued to the jury, go to the weight of O'Donnell's testimony and not its admissibility. (See *Burris v. Madison County* (1987), 154 Ill. App. 3d 1064, 1069-71, 507 N.E.2d 1267, 1270-71; *Thomas v. Brandt* (1986), 144 Ill. App. 3d 95, 101, 493 N.E.2d 1142, 1146; see also *Wilson v. Clark* (1981), 84 Ill. 2d 186, 194, 417 N.E.2d 1322, 1326-27 ("[A]n expert may give an opinion without disclosing the facts underlying that opinion. *** [T]he burden is placed upon the adverse party during cross-examination to elicit the facts underlying the expert opinion. [Citation.]").) Therefore, even if it were not waived, plaintiff would not prevail on this issue. We further note that the evidence was such that the jury could have found as it did even if it did not believe plaintiff was intoxicated, since it could have found that plaintiff (by riding too fast for the street and not keeping an adequate lookout) and Hout (by not keeping an adequate lookout) were the only proximate causes of the accident, and that negligence by defendants was not a proximate cause of the accident.

▆ We will now address plaintiff's contention that testimony that he had consumed beer prior to the accident should not have been admitted. This argument is based on the rule that, in the absence of supporting evidence, testimony concerning the drinking of intoxicants is inadmissible. (*Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 466, 392 N.E.2d 693, 696.)

> "The supporting evidence must reveal some 'act, action, conduct, appearance, observation, or circumstance *** [which] either directly or by reasonable inference, [shows] that the conduct of the individual at and before the accident was or may have been affected by the use of alcoholic beverages.' [Citation.]" (*Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 466, 392 N.E.2d 693, 696, quoting *Shore v. Turman* (1965), 63 Ill. App. 2d 315, 323, 210 N.E.2d 232, 236.)

In the case at bar, the testimony of O'Donnell that, in his opinion,

plaintiff's blood alcohol was .104 at the time alleged, which gives rise to the presumption that plaintiff was under the influence of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(b)(3)), and the testimony of O'Donnell that, in his opinion, plaintiff was intoxicated at the time of the accident, are supporting evidence which " 'either directly or by reasonable inference, [shows] that the conduct of [plaintiff] at and before the accident was or may have been affected by the use of alcoholic beverages.' " (*Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 466, 392 N.E.2d 693, 696, quoting *Shore v. Turman* (1965), 63 Ill. App. 2d 315, 323, 210 N.E.2d 232, 236.) Therefore, the trial court did not err in admitting evidence of plaintiff's drinking prior to the accident.

■ In his last issue plaintiff contends that the trial court erred in excluding testimony as to an admission made by Lootens. Counsel for plaintiff stated:

"Your honor, we understand that the defense is going to call Samuel Earl Johnston to testify on behalf of the defendants, including Mr. Lootens. We have raised this before cross-examination to avoid any problems.

In his deposition Mr. Johnston testified on January 7th, 1987 to a conversation he had with Mr. Lootens after this accident in which he inquired why you couldn't have stop signs at the intersection, inquiry being made by Mr. Johnston. In his deposition Mr. Johnston testified that Mr. Lootens told him that he agreed there ought to be signs at the intersection and if it was up to him there would be signs, but he couldn't get permission.

In the cross-examination of Mr. Johnston it's our position— we have indicated to you our position—that we ought to be able to ask Mr. Johnston whether he had a conversation with Mr. Lootens on the subject of whether there ought to be signs at that intersection and that Mr. Lootens gave him an opinion that there should have been signs at the intersection, and it's our position that this is not a situation where we are looking at remedial measures. It's the expression of a professional opinion by the person whose duty it is to make a professional judgment as to whether a sign ought to exist or not exist at a given location.

And we further indicated our view that inasmuch as the interrogatory answers in the case show that no request was ever made to any governmental body by Mr. Lootens or the Township Highway Commission to have signs placed there, that there had not ought to be, in connection with this type of cross-

examination, references again to needing permission from the County, which has already been excluded under the previous motion in limine."

Thus, plaintiff was asking to be permitted to elicit the testimony from Johnston during cross-examination.

The trial court excluded the testimony on the basis that it was "postoccurrence." However, the reasons a court gives are not material if there is a proper basis appearing in the record or in law which would sustain the ruling. (*The Ogden Group, Inc. v. Spivak* (1981), 92 Ill. App. 3d 932, 934, 416 N.E.2d 393, 394.) Further, a judgment may be affirmed on the basis of unargued legal grounds which have factual support in the record. (*The Ogden Group, Inc. v. Spivak* (1981), 92 Ill. App. 3d 932, 934, 416 N.E.2d 393, 394.) Such an unargued ground not stated by the trial court permits us to uphold the court's exclusion of the testimony plaintiff wished to elicit from Johnston, so we will not consider the correctness of the reason the trial court stated for its ruling.

As noted earlier, plaintiff asked to be permitted to elicit the testimony as to the claimed admission during cross-examination of Johnston. The testimony plaintiff wished to elicit was beyond the scope of defendant's direct examination of Johnston. Cross-examination in which a party attempts to put its theory of a case before a jury, but which is beyond the scope of the direct examination of the witness, is improper. (*Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, 569, 190 N.E.2d 315, 317.) The trial court's ruling precluding plaintiff from cross-examining Johnston as to Lootens's claimed admission was, therefore, proper.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and NASH, JJ., concur.