MARY M. BONIFAS RICE, Plaintiff-Appellant, v. MERCHANTS NATIONAL BANK, as Special Adm'r of the Estate of Darrell Hubbs, Defendant-Appellee.

Second District No. 2—90—0895

Opinion filed May 22, 1991.—Rehearing denied June 19, 1991.

WOODWARD, J., dissenting.

William A. Delaney II, of Lindner, Speers & Reuland, P.C., of Aurora (George P. Lindner, of counsel), for appellant.

Vincent Robertelli and Thomas C. Rueger, both of Giagnorio & Robertelli, Ltd., of Bloomingdale (Nancy J. Wolfe, of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Mary Bonifas Rice, appeals from a jury verdict in the circuit court of Kane County which awarded her $48,000 in damages. The jury reduced the damages awarded to $32,000 after determining that plaintiff was responsible for 33.33% of her injuries. On appeal, plaintiff contends that the trial court erred: (1) in allowing into evidence the deceased's toxicology report; (2) by permitting improper cross-examination of plaintiff concerning alcohol consumption, prior surgery, and pregnancies; (3) in instructing the jury on the statutory presumptions with respect to intoxication; and (4) in refusing to rule on her motion for summary judgment. In addition, plaintiff contends that the jury verdict finding her contributorily negligent was against the manifest weight of the evidence and that the jury disregarded proven elements of damages for her pain and suffering. We affirm in part, reverse in part and remand.

On January 10, 1989, plaintiff filed a complaint against defendant, the Merchants National Bank, as special administrator of the estate of Darrell Hubbs, seeking damages as a result of an automobile accident. The complaint alleged that Darrell Hubbs, the decedent, was driving an automobile in which plaintiff was a passenger and negligently caused the automobile to leave the road, causing a "violent collision." Thereafter, defendant filed an affirmative defense alleging that plaintiff was responsible for some or all of her injuries because she chose

to remain in decedent's automobile even though she was aware that he was "intoxicated and/or under the influence of a drug." The following facts were adduced at trial.

Plaintiff testified that she graduated from high school in 1981 and began working for an insurance company. Shortly thereafter, she got married, gave birth to a son, and moved to Virginia. In 1984, she and her son returned to Illinois and one year later her marriage was dissolved. In June 1988, plaintiff met decedent while she was bartending at Chanti's restaurant. Plaintiff dated decedent four or five times before agreeing to accompany him on a trip to Eastern Illinois University in Charleston. Decedent did not drink any alcohol or have any alcohol in the car during the trip to Charleston on July 2, 1988. After arriving in Charleston, decedent drove to Eric Zuspann's house, where he and plaintiff spent one night.

The following day decedent, plaintiff, and Zuspann left Charleston at approximately noon to return to Aurora. Before leaving the city, they stopped at a liquor store to purchase a six-pack of beer. Decedent and Zuspann each drank a beer and the remaining cans were placed in a cooler. Shortly thereafter they stopped at a Wendy's restaurant to use the washroom. After returning to the car, plaintiff sat in the backseat and shut her eyes. She opened her eyes when she felt the car driving on gravel and saw that the car was going to hit a tree. It was plaintiff's opinion that the car was travelling "[a]pproximately the speed limit, 55, 60" at the time it hit the tree.

Following the collision, plaintiff remained in the automobile for 45 minutes until paramedics could remove her. She was then taken to a local hospital and treated for a broken pelvic bone, back injuries, a sprained ankle, and torn knee ligaments.

Plaintiff indicated that she was physically active prior to the accident, engaging in aerobics on a daily basis and jogging, dancing, and horseback riding on a less frequent basis. Following the accident, she has experienced a constant pain in her back and has been unable to participate in many of these activities. In addition, she experienced a great amount of pain in her pelvic area during her most recent pregnancy, even though she did not experience any similar pain while she was carrying her first child.

On cross-examination, plaintiff stated that she had surgery on her feet to remove bunions approximately five months before the accident. However, she did not experience any problems with the surgery or healing process. In addition, plaintiff indicated that she did not have any other pregnancies other than the two mentioned on direct examination.

With respect to her trip to Charleston with decedent, plaintiff stated that they went to a bar where Zuspann worked the night before the accident. They planned on returning to Aurora with Zuspann to pick up a friend before visiting the Taste of Chicago, an annual celebration on Chicago's lakefront.

Shortly before the accident, plaintiff saw decedent and Zuspann fighting over the armrest in the front seat of the car. However, she did not see the car leave the road at any time before the accident. Plaintiff also stated, over objection, that she removed a can of beer from the cooler and "took a sip" of beer during the trip.

Eric Zuspann testified that he and decedent each had a "couple" of beers before they left Charleston with plaintiff on the day in question. However, he did not believe that plaintiff saw him and decedent drinking because she was inside the house. Zuspann indicated that the three of them left Charleston at approximately 12:30 p.m. and made only one stop before the accident. During the stop, plaintiff used a washroom at a Wendy's restaurant while decedent and Zuspann bought a six-pack of beer at a liquor store. Immediately prior to the collision, decedent and Zuspann were fighting over the armrest. The next thing Zuspann remembered was waking up in a hospital. Zuspann did not believe that decedent was intoxicated or impaired on the day of the accident.

Sergeant Thomas Walker of the Grundy County sheriff's department testified that he investigated the accident at issue in this case. Sergeant Walker stated that he could not find any evidence of any skidding, braking, yaws, or oversteering on the pavement before the car entered the gravel shoulder. The distance between the marks on the shoulder and the tree which the automobile struck was 122 feet. He was unable to determine how fast the automobile was travelling at the time of the impact. In addition, Walker observed three open cans of beer near the automobile and three unopened cans inside of a cooler in the backseat of the car.

Shirley Wille, a former co-worker of plaintiff, testified that plaintiff was in very good health before the accident and was a very active person. Following the accident, plaintiff became "very slow-moving" and appeared to be in a lot of pain.

Dr. Thomas Clark, a chiropractor, testified pursuant to an evidence deposition that he was plaintiff's current employer. Plaintiff performs clerical work for Dr. Clark and has demonstrated various problems with her back, especially when bending over or lifting objects. However, Dr. Clark has not treated plaintiff for any injuries and is not aware if she was presently seeking any medical treatment.

Dr. Gregory Schierer, an orthopedic surgeon, testified that he examined plaintiff two days after the accident. X rays of plaintiff's back revealed a compression fracture of her third lumbar vertebra, an injury which was consistent with an automobile accident like plaintiff was involved in. In addition, this injury would be likely to produce the pain which plaintiff was experiencing. Dr. Schierer also opined that plaintiff would probably experience this pain on a permanent basis.

Dr. Richard Richley also testified pursuant to an evidence deposition. Dr. Richley, an orthopedic surgeon, saw plaintiff on May 9, 1989, approximately 10 months after the accident and observed that her fractures had healed properly. He did recommend an exercise program to assist in her rehabilitation and to alleviate her back problems. `

Dr. Richley saw plaintiff a few more times before ordering a magnetic resonance imaging (MRI) scan for her back. The MRI revealed a "bulging of the L2-3 disc with some slippage of the spine at that level." This finding was consistent with plaintiff's chronic complaints of back pain. In addition, Dr. Richley opined that plaintiff would experience some degree of back pain on a permanent basis.

The first defense witness was Terry Marketti, a deputy sheriff of Grundy County. Deputy Marketti testified that he was the first police officer to arrive at the accident site and observed an automobile with "heavy front end damage." After the passengers were removed from the automobile, Marketti began his inspection and found three open beer cans between the console and driver's seat. He was unable to determine if the cans had been opened prior to the collision. He also found three unopened cans of beer in a cooler in the back of the car.

Following Deputy Marketti's testimony, defendant was permitted to introduce into evidence, over plaintiff's objection, decedent's toxicology report.

Leo Reeves, the Grundy County coroner, testified for plaintiff in rebuttal that he extracted a blood sample from decedent approximately two hours after his death. Decedent's sample was sent to a laboratory and was later determined to have a .12 blood-alcohol level. However, Reeves indicated that there was a potential for contamination of the sample because it was drawn from decedent's heart, which may have resulted in the "commingling of thoracic fluids." He did not know if the sample in this case was actually contaminated. He did indicate that decedent's blood-alcohol level was at the bottom of the level of presumed intoxication in this State.

On cross-examination, Reeves stated that he also took a vitreous fluid sample from decedent near the time he took the blood sample. Reeves pointed out that he did so because the fluid contained in the

eye would not be contaminated with other bodily fluids. The vitreous sample revealed a blood-alcohol level of .11.

Following Reeves' testimony, both sides rested. After hearing closing arguments, the jury deliberated and returned a verdict in favor of plaintiff, and assessed damages at $48,000. The jury also determined that plaintiff was contributorily negligent (33.33%) and reduced the amount of recoverable damages to $32,000. Plaintiff's post-trial motion was denied, and this appeal followed.

Initially, we note that plaintiff has filed a motion to strike a portion of defendant's brief concerning the blood-alcohol results at issue in this case, which we ordered to be taken with the case. Plaintiff objects to one sentence in the argument section which is allegedly an opinion and "is nowhere to be found in the trial record." We agree with plaintiff and grant this motion to strike.

Furthermore, defendant has also filed a motion to strike, contending that plaintiff's reply brief did not conform to Supreme Court Rule 341(g) (134 Ill. 2d R. 341(g)). Defendant argues that plaintiff's reply brief does not respond to any arguments presented in defendant's brief. We disagree. While plaintiff makes some points which are not found in the record and which this court will not consider, the brief as a whole does respond to defendant's brief and will not be stricken. See 134 Ill. 2d R. 341(g).

Plaintiff first contends on appeal that the trial court improperly allowed defendant to introduce a toxicology report of decedent's blood-alcohol level into evidence at trial because there was no evidence to establish what the blood-alcohol level was at the time of the accident. Plaintiff contends that defendant was required to present some evidence on retrograde extrapolation or use some other method to demonstrate what decedent's blood-alcohol level was at the time of the accident.

Plaintiff relies on *Cuellar v. Hout* (1988), 168 Ill. App. 3d 416, to support her position. In *Cuellar*, the plaintiff was involved in a motorcycle accident. Following the accident, he was taken to a hospital, and a blood-alcohol test was performed. The test indicated a blood-alcohol level of .064. At trial, a pharmacologist testified that the plaintiff's blood-alcohol level was .104 at the time of the accident, based upon the use of retrograde extrapolation. On appeal, this court determined that the expert testimony on retrograde extrapolation was proper because the relevant inquiry concerned the blood-alcohol level at the time alleged and not at the time the sample was taken. (*Cuellar*, 168 Ill. App. 3d at 421.) The court noted that retrograde extrapolation, or some other method, was a proper method to demonstrate "the con-

centration of alcohol in the person's blood or breath at the time alleged." 168 Ill. App. 3d at 421.

■■ Plaintiff asserts that *Cuellar* "stands for the proposition that retrograde extrapolation or some other method is a prerequisite to the admissibility of a blood alcohol test taken subsequent to the time alleged." We disagree. It is our opinion that some form of retrograde extrapolation is not a foundational requirement for the admission of a blood-alcohol test in all cases in which a lapse of time between the incident and actual testing occurs.

We note that the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 1—101 *et seq.*) provides that a blood-alcohol level of .10 or more at the time alleged will result in a presumption of intoxication. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.2(b)(3).) Given that it is extremely unlikely that a blood sample can be drawn at the exact time of the accident, courts have permitted testimony which estimates the blood-alcohol level at a time earlier than when the sample was drawn. (*Cuellar*, 168 Ill. App. 3d at 421; *People v. Johnigk* (1982), 111 Ill. App. 3d 941, 944.) Thus, although the plaintiff's blood-alcohol level in *Cuellar* was .064 approximately two hours after the accident, the court permitted an expert to testify that it would have been .104 at the time of the accident. *Cuellar*, 168 Ill. App. 3d at 421.

While we agree with the holding in *Cuellar*, we find that it did not establish a foundational requirement for extrapolation evidence before a blood-alcohol test can be admitted into evidence at trial. Of course, such evidence was necessary in *Cuellar* because the .064 blood-alcohol level failed to reach the minimum level for a statutory presumption of intoxication. It was only after a retrograde extrapolation analysis that the blood-alcohol level rose to .104, a level which permitted a presumption of intoxication.

■ While extrapolation evidence would have been permissible in the case at bar (see *Johnigk*, 111 Ill. App. 3d at 944), it was not a foundational requirement because decedent's blood-alcohol level was .12 nearly two hours after the accident. Given that a reasonable length of time elapsed between the accident and when the sample was drawn and the sample registered above the statutorily imposed minimum .10 required to establish a presumption of intoxication, we hold that no extrapolation testimony was required before the test results could be admitted at trial.

We next consider plaintiff's contention that the trial court improperly allowed defendant to cross-examine her concerning her alcohol consumption, prior foot surgery and other pregnancies. Plaintiff asserts that these instances of erroneous cross-examination were preju-

dicial to her and resulted in reversible error. We will address each of plaintiff's assertions in turn.

With respect to the questions concerning her alcohol consumption, plaintiff contends that there was no evidence at trial indicating that she was intoxicated. Over objection, defense counsel was permitted to ask plaintiff: "Did you ever take a beer, a can of beer out of the cooler?" Plaintiff did not object to the question: "Did you drink out of that can?"

■ In general, evidence that a person has consumed alcoholic beverages is not, by itself, admissible. (*Lively v. Kostoff* (1988), 167 Ill. App. 3d 384, 391.) There must also be evidence to show that the drinking resulted in intoxication. *Lively*, 167 Ill. App. 3d at 391; *Taylor v. City of Chicago* (1983), 114 Ill. App. 3d 715, 717.

■ We find that the trial court properly overruled plaintiff's objection to the question concerning whether she ever took a can out of the cooler. This question does not specifically ask if she consumed any alcoholic beverages, but only asks if she removed a can from the cooler. However, the question whether plaintiff took a drink out of the can does request information regarding her alcohol consumption. Had this question elicited this information to prove that plaintiff was intoxicated, this would constitute an error, as there was no evidence to indicate that plaintiff was intoxicated. (See *Lively*, 167 Ill. App. 3d at 391.) However, the question was not asked for this purpose but instead was asked to show plaintiff's state of mind in choosing to remain in the automobile and her knowledge that alcoholic beverages were being consumed. Under these unique circumstances, we find no error in the admission of this evidence.

Plaintiff also contends that defense counsel should not have cross-examined her concerning whether she had undergone foot surgery prior to the accident and whether she was pregnant at any time after she gave birth to her son. Plaintiff argues that these questions were irrelevant and created such prejudice as to amount to reversible error.

■ We note that plaintiff did not object to either of these questions when they were asked. In general, the failure to specifically and timely object to certain testimony at the time it is presented waives the objection for purposes of review. (*Von Seggren v. Smith* (1987), 151 Ill. App. 3d 813, 814-15; *Friedman v. Park District* (1986), 151 Ill. App. 3d 374, 383.) We see no reason to ignore the waiver rule in this case as plaintiff clearly failed to object to the alleged improper questioning during cross-examination.

Plaintiff next argues that the trial court improperly instructed the jury on the statutory presumptions concerning intoxication. Plaintiff

points out that the use of a statutory presumption of intoxication to prove her contributory negligence unjustifiably negated her observations with respect to decedent's driving ability on the day in question. Plaintiff further asserts that this presumption was not meant to apply to passengers of vehicles, but only to drivers, and should not be permitted to punish her when she had no knowledge of any impairment to decedent.

The instruction at issue in this case originally stated:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
> The concentration of alcohol in the person's blood or breath at the time alleged as shown by analysis of the person's blood, urine, breath, or other bodily substance shall give rise to the following presumptions:
>
> 1. If there was at that time an alcohol concentration of 0.05 or less, it shall be presumed that the person was not under the influence of alcohol.
>
> 2. If there was at that time an alcohol concentration in excess of 0.05 but less than 0.10, such facts shall not give rise to any presumption that the person was or was not under the influence of alcohol, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcohol.
>
> 3. If there was at that time an alcohol concentration of 0.10 or more, it shall be presumed that the person was under the influence of alcohol.
>
> If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent or contributorily negligent before and at the time of the occurrence."

At the instructions conference, the trial court decided to give the instruction over plaintiff's objection. However, the court reversed its ruling the following day when plaintiff renewed her objection to the instruction. Plaintiff argued that the instruction was inappropriate because it allowed the jury to use the presumption of intoxication to determine whether she was contributorily negligent. The court agreed with plaintiff and struck the words "or contributorily negligent" from the final paragraph.

▆ It is our opinion that the trial court adequately addressed plaintiff's concerns with the instruction when it struck the "or contributorily negligent" phrase from the original instruction. By removing

this phrase, the court effectively instructed the jury that the instruction applied only in assessing decedent's negligence as the driver of the automobile. Furthermore, the instruction in no way negated plaintiff's presentation of her own observations of decedent's driving to the jury. Instead, the jury, as trier of fact, was simply required to balance the evidence of decedent's blood-alcohol level (a presumption of intoxication according to the instruction) with plaintiff's observations to determine if plaintiff was contributorily negligent by remaining in the automobile. We find no error in giving this instruction in this case.

■ Plaintiff also argues that the trial court improperly instructed the jury on intoxication. (See Illinois Pattern Jury Instructions, Civil, No. 12.01 (2d ed. 1971).) At the instructions conference, the court stated: "Defendant's 83, I.P.I. 12.01 is given without objection." To preserve an objection to a jury instruction, a party must object to the instruction offered, specify the defect claimed, and tender a correct instruction. (*Deal v. Byford* (1989), 127 Ill. 2d 192, 202-03.) The failure to do so will result in the waiver of the issue for review purposes. (*Young v. City of Centreville* (1988), 169 Ill. App. 3d 166, 177.) This issue has not been properly preserved for review, and we will not consider it.

■ Plaintiff next alleges that the trial court erroneously denied her motion for summary judgment. Plaintiff argues that the local rule which the court based its ruling on (16th Jud. Cir. Ct. R. 6.04(a) (1989)) conflicts with section 2—1005(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(a)). However, the denial of a motion for summary judgment is not reviewable on appeal after a trial has been held because any error in the denial merges into the subsequent judgment. (*American States Insurance Co. v. Action Fire Equipment, Inc.* (1987), 157 Ill. App. 3d 34, 39; *Skach v. Gee* (1985), 137 Ill. App. 3d 216, 221.) The rationale for this rule is that it would be unjust to overturn a verdict reached after trial, where the evidence was presented to the trier of fact and subject to cross-examination, on evidence obtained solely from the pleadings and affidavits. (*Paulson v. Suson* (1981), 97 Ill. App. 3d 326, 328.) We see no reason to disregard this rule in this case, as plaintiff had the benefit of presenting all factual disputes to the jury for a resolution.

We next consider plaintiff's contention that the jury verdict finding her contributorily negligent was against the manifest weight of the evidence. Plaintiff argues that there was no evidence to indicate that she was aware of decedent's intoxication and thus no evidence

establishing that she failed to exercise ordinary care by remaining in the vehicle.

■ We will not disturb a jury's findings unless they are clearly erroneous or are against the manifest weight of the evidence. (*Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 529.) For a verdict to be against the manifest weight of the evidence, it must appear that a conclusion opposite to that which the trier of fact reached is clearly evident. (*Central Production Credit Association v. Kruse* (1987), 156 Ill. App. 3d 526, 532.) Furthermore, we must view the evidence in the light most favorable to the appellee when determining whether a verdict is contrary to the manifest weight of the evidence. *Beddla v. Wilkins* (1989), 181 Ill. App. 3d 833, 844; *Bautista*, 152 Ill. App. 3d at 529.

■ With these considerations in mind, we find that the jury's verdict finding plaintiff contributorily negligent was not against the manifest weight of the evidence. In making this determination, we are mindful that passengers such as plaintiff normally trust the driver to operate the vehicle properly unless there is some reason to be aware of his or her lack of care. (*Bauer v. Johnson* (1980), 79 Ill. 2d 324, 331.) No passenger has a duty to control the driver unless the passenger knows or should have known that such actions are essential to his or her own safety. *Bauer*, 79 Ill. 2d at 332; *Galliher v. Holloway* (1985), 130 Ill. App. 3d 628, 636.

We find that the present case involves a situation in which the jury could properly find that plaintiff was aware that precautionary measures were necessary to protect her own safety. Plaintiff had a duty to exercise ordinary care for her own safety. (*Newton v. Meissner* (1979), 76 Ill. App. 3d 479, 489.) An examination of the record reveals that plaintiff knew that beer was purchased near the beginning of the trip and that decedent, the driver of the automobile, consumed some of the beer. In addition, plaintiff was aware of the elbowing episodes between decedent and Zuspann during the course of the trip. Plaintiff also had an opportunity to leave the car when it stopped at the Wendy's restaurant. Although there was no evidence of any erratic driving before the accident, it is our opinion that the above-mentioned evidence was sufficient to support the jury's verdict finding plaintiff contributorily negligent in this case. See *Hayes v. Alsburg* (1978), 72 Ill. 2d 560, 567 (combination of evidentiary factors produced question of fact as to whether a backseat passenger was in due care for her own safety); *Northern Trust Co. v. American Airlines, Inc.* (1985), 142 Ill. App. 3d 21, 32 (question of whether plaintiff

was contributorily negligent was "preeminently for the jury to decide").

Plaintiff next contends that the jury also disregarded proven elements of damages for her pain and suffering. Plaintiff points out that the jury awarded her $48,000 in damages to cover her medical expenses but failed to award her any damages for pain and suffering, lost wages, or disability and disfigurement. Plaintiff argues that the jury's failure to award her damages beyond those for medical expenses was inconsistent, against the manifest weight of the evidence and requires a new trial on damages only.

Plaintiff relies exclusively on *Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, to support her position. In *Hinnen*, the jury awarded the plaintiff $2,500 for past medical expenses but failed to award her any damages for lost earnings, disability or pain and suffering. The appellate court reversed the damages award, holding that the verdict was internally inconsistent. (*Hinnen*, 144 Ill. App. 3d at 1046.) The court noted: "If the jury believed that plaintiff had no compensable pain and suffering, its award of pain-related expenses was wholly unwarranted and contrary to the manifest weight of the evidence. Conversely, if it believed that plaintiff's pain and suffering were sufficiently serious to warrant expenditures for pain medication and physical therapy, its failure to award her compensation for that pain and suffering means that it disregarded a proven element of damages." 144 Ill. App. 3d at 1046.

Plaintiff argues that the itemized jury verdict in the present case is identical to the jury verdict in *Hinnen* in that the jury in both cases failed to provide any damages for pain and suffering. The jury itemized damages in the present case as follows:

"$48,000 itemized as follows:

| | | |
|---|---|---|
| a. Disability and disfigurement: | | $-0- |
| b. Pain and suffering: | | $-0- |
| c. Medical expenses: | | $48,000 |
| d. Lost earnings: | | $-0-" |

Plaintiff contends that the jury disregarded proven elements of damages based on a reading of the itemized verdict form. Defendant disagrees, pointing out that the jury awarded plaintiff more damages for her medical expenses than she actually incurred. According to defendant, the jury's award takes into account more than simply the medical bills and bears a reasonable relationship to her actual loss.

 We agree with plaintiff that the jury award in this case failed to award her all of the proven elements of damages. While defendant's position is entirely plausible on this issue, it is neverthe-

less speculation. Because an itemized verdict form was used which contained a space for pain and suffering damages, we cannot presume that any excess damages awarded for medical expenses was intended to compensate plaintiff for some other element of damage. (See *Hinnen*, 144 Ill. App. 3d at 1046.) Thus, plaintiff is entitled to a new trial on the issue of damages only.

In conclusion, we find no error in the trial court's rulings on the admissibility of the toxicology report, the cross-examination of plaintiff, the jury instructions on intoxication, and the ruling on plaintiff's motion for summary judgment. Furthermore, the jury verdict finding plaintiff contributorily negligent was not against the manifest weight of the evidence. We do believe, however, that the jury did disregard proven elements of damages and that plaintiff is thus entitled to a new trial on damages only. Following plaintiff's new trial on damages only, the trial court is instructed to reduce the jury award by 33.33%, the amount which the jury in this case found plaintiff to be contributorily negligent.

For these reasons, the judgment of the circuit court of Kane County is affirmed in part and reversed in part, and the cause is remanded for a new trial on damages only.

Affirmed in part; reversed in part and remanded.

UNVERZAGT, J., concurs.

JUSTICE WOODWARD, dissenting:
One of the important issues in this case was the extent, if any, of the contributory negligence of the plaintiff as the plaintiff's damages were reduced by one-third, or $16,000, by the jury's verdict. One of the facts supporting the jury's finding of contributory negligence on the plaintiff's part would be voluntarily riding in the motor vehicle with a driver who was intoxicated or in a situation where there was evidence that would be sufficient to cause a reasonable person to know that the driver was intoxicated. To emphasize this issue, the defendant filed an affirmative defense alleging that the plaintiff was responsible for her injuries because she chose to remain in decedent's car even though she was aware that he was intoxicated..

In support of the affirmative defense, the defendant introduced over the plaintiff's objection a toxicology report showing that the decedent's blood-alcohol level was .12 approximately two hours after the accident. The plaintiff contends that, in order to introduce this toxicology report in evidence, a foundation was required showing retro-

grade extrapolation or some other method of demonstrating decedent's blood-alcohol level at the time of the accident. "Extrapolation" is defined as "[t]he process of estimating an unknown number outside the range of known numbers. Term sometimes used in cases when a court deduces a principle of law from another case." (Black's Law Dictionary 528 (5th ed. 1979).) "Retrograde" means "backward."

The majority opinion states:

"Given that a reasonable length of time elapsed between the accident and when the sample was drawn and the sample registered above the statutorily imposed minimum .10 required to establish a presumption of intoxication, *we hold that no extrapolation testimony was required before the test results could be admitted at trial.*" (Emphasis added.) 213 Ill. App. 3d at 797.

The above statement of the majority ignores the following language of this court in *Cuellar v. Hout* (1988), 168 Ill. App. 3d 416:

"Contrary to plaintiff's contention, the language quoted does not require that the test be 'given "at the time" of the occurrence.' Rather, the statute requires that the concentration of alcohol 'at the time alleged' be 'shown by analysis of the person's blood, urine, breath, or other bodily substance' without reference to when the substance analyzed is taken from the person. [Citation.] It is, therefore, broad enough to allow the admission of evidence of the analysis of blood, urine, breath, or some other bodily substance at a time subsequent to the time alleged *when that analysis can show, by use of retrograde extrapolation or some other method, the concentration of alcohol in the person's blood or breath at the time alleged.* We note that in virtually every case there will be some lapse of time between the time alleged and the performance of the analysis of the person's blood, urine, breath, or other bodily substance *so that in virtually every case a degree of extrapolation from the analysis will be required.*" (Emphasis added.) 168 Ill. App. 3d at 421.

The majority opinion, while agreeing that evidence of retrograde extrapolation is admissible, distinguishes *Cuellar* on the basis that, in that case, evidence of retrograde extrapolation was necessary because the blood-alcohol level of the driver was .064 approximately two hours after the accident, and evidence of retrograde extrapolation showed the blood-alcohol level to be .104 at the time of the accident, thus permitting a presumption of intoxication. In the present case, the opinion of the majority *assumes* that, since the test conducted on the decedent showed a blood-alcohol level of .12 two hours after the accident, his blood-alcohol level had to have been higher at the time of the acci-

dent. Further, the majority *assumes* that the blood-alcohol level would not be lower at anytime within the period of two hours prior to the administering of the test.

I believe that *Cuellar* requires evidence of retrograde extrapolation when the test to determine the blood-alcohol level is administered, as it was in this case, two hours subsequent to the accident. *Cuellar* makes it clear that the relevant time of a person's blood-alcohol level is at the time of the accident, not sometime in the future. It is clear from *Cuellar* that the reason virtually every case will require a degree of extrapolation is because in virtually every case there will be a lapse of time between the accident and the testing of the blood-alcohol level.

In *Cuellar*, the plaintiff was involved in an accident while driving a motorcycle, and the defendant asserted that he was intoxicated at the time of the accident. The defendant presented as a witness a pharmacologist, pharmacist and nutritionist who testified that, based on retrograde extrapolation, the blood-alcohol level of the plaintiff at the time of the accident was .12, although the test taken two hours after the accident showed .064. The plaintiff, on the other hand, presented a witness who was a pathologist who stated that a single measurement of blood-alcohol level could not be relied upon because without further evidence it could not be determined if the person tested is in the absorption phase or in the elimination phase; and that this determination is dependent upon the type of beverage consumed and the type of food consumed, which was all pertinent information to the validity of the retrograde extrapolation testimony.

The majority also ignores the fact that its argument distinguishing *Cuellar* was, in fact, raised in that case and rejected. The *Cuellar* court stated:

> "Plaintiff attempts to distinguish [*People v. Johnigk* (1982), 111 Ill. App. 3d 941 (retrograde extrapolation testimony allowed),] on the basis that the actual blood-alcohol level found was in excess of .10 in *Johnigk* and was less than .10 in the case at bar. [Citation.] This distinction is irrelevant since (1) it is not the blood-alcohol level at the time of the test, but rather that at the time alleged, that is significant and (2) *the distinction does not concern in any way the admissibility of testimony extrapolating from the actual test results to an earlier time.*" (Emphasis added.) 168 Ill. App. 3d at 421-22.

In view of the publicity and general knowledge of jurors as operators of motor vehicles that a blood-alcohol level of .10 or above presumes intoxication, the admission of the toxicology report in this case

without a prior scientific analysis unduly emphasized the issue of the decedent's intoxication when the real issue as to plaintiff's contributory negligence *involved her opportunity to be aware of decedent's condition* while riding in his motor vehicle.

I conclude that it was error to admit the evidence of the blood-alcohol level of the decedent two hours after the accident without evidence of retrograde extrapolation or some other method of determining what the decedent's blood-alcohol level was at the time of the accident.

I further conclude that this error requires that plaintiff receive a new trial. It is impossible to determine how much weight the jury gave to the toxicology report of decedent's blood-alcohol level when it determined the degree of plaintiff's contributory negligence. It, therefore, cannot be said that the jury would have found the plaintiff to be 33⅓% negligent without the evidence of decedent's blood-alcohol level. I would reverse and remand this cause for a new trial.