LEE SHER, Indiv. and as Special Adm'r of the Estate of Darcy Sher, Deceased, Plaintiff-Appellant, v. DEANE H. TANK, INC., Defendant-Appellee.

First District (6th Division)   No. 1—93—4586

Opinion filed January 20, 1995.

Robert F. Lisco, of Chicago, for appellant.

Tribler & Orpett, P.C., of Chicago (Douglas C. Crone and Panos T. Topalis, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:
The plaintiff, Lee Sher, appeals from a jury verdict in favor of the defendant, Deane H. Tank, Inc. (Tank). She maintains that trial errors occurred that require a new trial; she does not contend that the verdict was against the manifest weight of the evidence.

The plaintiff, individually, and as administrator of the estate of her daughter, Darcy Sher, filed a complaint for breach of contract against Travelers Insurance Company (Travelers) and Tank. She alleged that she had engaged Tank as a broker to obtain insurance for her with Travelers; the insurance was to cover certain items of jewelry owned by the plaintiff and her daughter. She alleged in the two-count complaint that Tank, acting as the agent of Travelers, forged the plaintiff's signature to an application for insurance which omitted a "clear history that the Plaintiff had verbally advised the Defendant"; failed to properly schedule jewelry with Travelers after Tank specifically had been given the schedule by the plaintiff; and failed to advise Travelers that the plaintiff had had "two small jewelry losses three years prior to the placement of the insurance after having been so advised by the Plaintiff." Count I sought compensatory damages in the sum of $117,900. Count II sought $250,000 in punitive damages and further alleged that Tank had "willfully and wantonly informed the plaintiff that full insurance had been obtained when the same was no[t] true."

Tank filed affirmative defenses including an allegation that the plaintiff had "misrepresented [her] prior loss history on [the] application of insurance, [her] statements under oath and in [her] sworn Proof of Loss." Shortly before the trial was to begin, Travelers settled with the plaintiff for $35,000.

The plaintiff testified that she spoke on the telephone to David Tank, the son of the owner of the defendant agency in November 1988. She told him that she was anxious to have her jewelry and the jewelry of her daughter insured because she had had a very recent jewelry loss due to a "robbery" in 1988. She also told him about some items stolen from her car in 1987. These were losses in excess of $40,000. She also told him about a claim for a curtain loss that she had made to Allstate Insurance Company, which had occurred less than a year before the 1988 jewelry loss. She received $1,000 from Allstate. She also told Tank that previously she had been insured by

Fireman's Fund Insurance Company and that she had received a notice from Fireman's Fund that they were not going to renew her coverage. Tank never told her that her prior losses would bar her from getting coverage with Travelers. She never signed any written documents for Tank or his agency, and she never authorized Tank to sign any documents on her behalf, including the application for insurance.

She originally submitted an appraisal from Hoffman's Jewelry for the three pieces of jewelry that she wanted to insure with Travelers. These pieces had originally been purchased by her husband from Hoffman's. She felt that the $50,000 appraisal for the ring was too high; and she took it to Milada, a different jeweler, who appraised the ring at $38,500. She spoke to David Tank after she submitted the additional Milada appraisal. He indicated that she was insured on all three items. She paid the premium that was submitted to her. All three items were stolen on March 10, 1989, from her Lincolnwood home. The stolen jewelry included pieces she had replaced from an earlier burglary in 1988. None of the jewelry stolen in 1988 was ever recovered. She immediately contacted the Tank agency about the loss. She was questioned by Travelers attorneys; and she did not attempt to conceal any prior claims from losses she sustained.

On cross-examination, the plaintiff testified that she did not recall any burglary jewelry loss claim made to Farmer's Insurance Company in 1982 or 1983. She testified that she had made a claim for jewelry loss against Underwriters Insurance Company for loss of a ring in 1983 and that she made a claim with Fireman's Fund for jewelry loss in 1984. She also testified that she had made a claim for a jewelry loss on a previous occasion when she had insurance with Travelers.

During her cross-examination she was also asked if she had been asked the following questions and made the following answers in sworn statements to representatives of Travelers:

"Q. Is it correct that other than the Fireman's Insurance claim that you had in 1988, that's the only other burglary or theft claim that you have had; is that correct?

A. To my knowledge, yes.

* * *

Q. Would it be fair to say that other than the loss you had with Fireman's Fund Insurance Company in 1988, you nor your husband have been involved in any other burglaries or thefts involving loss of jewelry or household goods?

A. Nothing that I can think of."

She testified that she did not remember being asked either question

and giving either answer. It was later established that she had made those answers to those questions.

No opinion evidence of the value of the missing jewelry was introduced. The defendant made a motion for a directed verdict on the ground that there was no evidence of value, and the judge denied the defendant's motion.

Deane H. Tank, Sr., the overall operating manager of the Tank Insurance Agency in December 1988, and father of David Tank, testified that the plaintiff called his office and told him that she had an insurance problem. After his telephone conversations with the plaintiff, he left instructions with Helen Kawasaki, the personal line manager for his agency, to give the file to David Tank, an insurance broker working in the agency. Deane Tank had nothing to do with the preparation or execution of the insurance application. He knew that the application was never sent to the plaintiff at any time after it was signed by Kawasaki.

David Tank testified that he contacted the plaintiff pursuant to a message from Deane Tank. The plaintiff did not tell him that another insurance company had refused to renew her coverage. She did not tell him that she had had a loss of jewelry about five or six months before the time she contacted his office. She did mention some loss relating to curtains in her home. He considered this "incidental." A written application for insurance with Travelers was prepared by Kawasaki, who also signed the plaintiff's name and David Tank's name, as agent, on the application. The application was never sent to the plaintiff to review as to its accuracy before it was submitted to Travelers. The application had the word "None" after "List all losses sustained during the three years which have been recoverable under this policy," even though the plaintiff had told him about some sort of curtain loss. He did not think that loss was "important."

Helen Kawasaki testified that she gave the plaintiff's file to David Tank at Deane Tank's direction. The following notice appeared on the second page of the plaintiff's insurance application:

> "I declare I have personally read this application and the statements are true."

The plaintiff's signature was actually signed by Kawasaki. She checked the box "No" on the application in answer to the following question: "During the past three years has similar insurance for the applicant ever been cancelled, declined or renewal refused for cause?"

Gary Schild, an insurance investigator retained by Travelers, was assigned to investigate the plaintiff's claim. He took a tape-recorded statement from the plaintiff in which she told him that the missing jewelry had been concealed in a table with a false bottom.

Someone had removed the jewelry from that table. He found no evidence of a forcible entry to the home. He determined that the plaintiff had made prior claims through an indexing system. He said that some of the articles taken in the prior claims matched the articles allegedly taken in "this particular claim." After the witness examined his report, the following occurred:

"[Defendant's Attorney] Q. I was questioning you prior to our marking that exhibit about whether the items you discovered had previously been stolen and that were stolen again in this particular claim?

A. Yes.

Q. Can you describe those items to us and tell us how you know that?

A. The first item is described as a 14 karat yellow gold ladies ring, 44 round diamonds, 1 cushion shaped diamond valued at $24,000[.] [I]dentically described item appeared on the Fireman's Fund '88 claim and also on a claim back in March 11, of '85 which was filed through Traveler's.

Q. Are there any other items that appear to be identical to items allegedly stolen on the March 10 loss?

A. Yes, another item identified on the appraisal is SO143, it's a 14 karat black onyx ring with 27 round diamonds, also appears on the '89 claim with Traveler's, the '88 claim with Fireman's and the '85 claim with Traveler's."

Schild testified that he asked the plaintiff whether she had had any losses by way of theft or burglary before the loss in question. She answered that she had had one burglary which was covered by Fireman's Fund in 1988. At the time he was questioning her he had a report which showed that she had made eight prior claims for theft or burglary of jewelry items beginning on February 19, 1983. He testified to the specifics of each of those claims.

Harry Shepard, a property claim supervisor for Travelers, testified that in making his decision to deny the plaintiff's claim, he relied on Schild's report, the proof of loss statement submitted by the plaintiff and the answers under oath made by the plaintiff to Schild. He said he did not rely on the plaintiff's application for insurance. In the letter he sent to the plaintiff, he said that Travelers was denying coverage because of the "[m]aterial misrepresentations made by you on your proof of loss and during your examination under oath concerning the validity of this claim and your denial of any involvement in the alleged theft." The letter also said, "You misrepresented your prior claim history to various Traveler's representatives." The letter made no specific reference to the application that had been prepared by Kawasaki.

The plaintiff's sole assignment of error centers on a motion *in limine* she filed before trial. In that written motion the plaintiff asked that the defendant be "restricted from bringing forth any evidence concerning any loss history of the Plaintiff prior to the three years before the execution of the application for insurance." After the arguments of counsel, the judge denied the motion *in limine* but made it clear that he was "not opening the door by [his] ruling." He said, "I don't know how far they are going to go into it, but be very guarded." Later the plaintiff made another motion seeking to bar the defendant from introducing evidence of the value of the other claims. He said that "just the fact that she made claims is what the issue should be." The judge said that he would reserve his ruling. Later, during the cross-examination of the plaintiff, the judge denied the defendant the right to inquire into the value of the claims.

Whether a motion *in limine* should be granted is subject to the trial judge's discretion (*Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 511 N.E.2d 690) and a reviewing court will not reverse a trial court's order allowing or excluding evidence *in limine* absent a clear showing of abuse of that discretion. (*Cochran v. Great Atlantic & Pacific Tea Co.* (1990), 203 Ill. App. 3d 935, 561 N.E.2d 229.) We believe that the trial judge did not abuse his discretion in granting the motion *in limine.*

■ The principal defense, if not the only one, was Tank's contention that the false answers the plaintiff made under oath were the basis of the denial of her claim, rather than the negligence of Tank in the preparation of the application. In order to establish the falsity of those answers, the defendant necessarily had to show the existence of the previous claims. Barring the proof of the previous claims would have destroyed the defendant's defense. The judge did not abuse his discretion in denying the motion *in limine*; indeed, in our judgment, an order allowing the motion *in limine* would have been an abuse of discretion.

■ In addition, we do not believe the plaintiff has properly preserved this claim of error for review. Despite an adverse ruling *in limine*, the movant remains obligated to contemporaneously object when the evidence is offered or the objection will be waived. (*Gonzalez v. Prestress Engineering Corp.* (1990), 194 Ill. App. 3d 819, 551 N.E.2d 793; for a comprehensive discussion of the law governing motions *in limine* and the obligations of the parties after a ruling, see *Cunningham v. Millers General Insurance Co.* (1992), 227 Ill. App. 3d 201, 591 N.E.2d 80.) The plaintiff's attorney not only failed to object to the defendant's cross-examination of his client, but he asked her about the prior jewelry losses on direct examination.

We do believe, however, that the defendant's proof improperly went beyond simply establishing that the plaintiff had made previous claims. Schild's testimony was designed to establish that the plaintiff had not only made claims, but that she had made fraudulent claims. It is the general rule that a witness may not be impeached by proof of specific acts of wrongdoing. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 608.5 (5th ed. 1990).) But again, no objection was made to the testimony. Consequently, any objection was waived. Moreover, we believe that the properly admitted evidence establishes that the plaintiff did, in fact, make false statements under oath; and the plaintiff does not dispute that an insured's false answers to an insurer investigating a claim may constitute a breach of the insuring agreement. Consequently, we conclude that the verdict would have been the same in the absence of the improperly admitted evidence.

The judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA, P.J., and RAKOWSKI, J., concur.