FIRST DIVISION
March 3, 2008

No. 1-06-2914

| | | |
|---|---|---|
| MICHAEL PETRASKI, Guardian of the Estate of MARGARET PETRASKI, a Disabled Person, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| DEBORAH THEDOS, individually and as agent/employee of the SHERIFF OF COOK COUNTY, and MICHAEL SHEEHAN, SHERIFF OF COOK COUNTY, | ) ) ) ) | Honorable Richard J. Elrod, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE WOLFSON delivered the opinion of the court:

Margaret Petraski was seriously injured when she turned her car into the path of a high-speeding Cook County Sheriff's police car driven by Officer Deborah Thedos. A jury found for Petraski's guardian and returned a verdict in the amount of $35,835,684. The award was reduced by 25% to $26,876,763, based on Petraski's contributory negligence.

This appeal by the County and Thedos raises issues concerning expert testimony. One of them--whether evidence of Petraski's consumption of alcohol should have been admitted-- causes us to reverse the judgment and order a new trial.

FACTS

On May 28, 2001, at approximately 2:26 a.m., Thedos and

Petraski were involved in a motor vehicle accident at the intersection of Central Avenue and Midlothian Turnpike.

Thedos was on duty as a Cook County sheriff's police officer. She and another officer, Yolanda Collins, were sitting in their vehicles in a White Hen parking lot on 143rd Street. At 2:19 a.m., a police dispatcher relayed a call for help involving an "unwanted subject, ex-wife." Officer Craig Januchowski responded on the radio that he was en route to the call. Thedos responded that she also was en route to the location. A third officer, Michael Healy, responded that he would provide backup. None of the officers notified dispatch that he or she was proceeding "code," a phrase meaning a request for permission to proceed at a high rate of speed with emergency lights and siren activated.

Thedos testified she responded to the call as if it were an emergency. About two blocks before each intersection, she manually operated her siren, which emitted a "whoop-whoop" sound. Her emergency lights were on at all times. As she traveled east on Midlothian Turnpike toward Central Avenue, Thedos saw a red light facing her at the intersection. She slowed and checked both sides of the intersection to make sure other drivers saw and heard her. She saw no northbound or southbound traffic. To her left, she saw a green light that controlled northbound traffic on

Central. To her right, she saw a "green glow" for southbound traffic on Central. When Thedos was 20 feet from the intersection, she saw Petraski's car stopped in the left-turn lane facing west on Midlothian. Thedos proceeded through the red light at the intersection. Petraski made a left turn in front of Thedos' vehicle. The two cars collided. Petraski was severely injured in the collision.

Officer Yolanda Collins responded to the scene. She testified Thedos' emergency lights were on when Thedos left the White Hen, and the lights were still on when she arrived at the accident scene. Five witnesses who lived near the accident scene testified they heard the sound of the crash. Two of the witnesses said they heard a police siren before the crash. The other three witnesses did not hear a siren. Four of the witnesses saw the emergency lights activated on Thedos' squad car when they viewed the accident scene. The fifth witness said she saw a police car with its lights on but did not specify whether they were emergency lights.

Plaintiff's expert witness Arnold Siegel estimated Thedos' car was going 70 to 75 miles per hour at the time of impact. He estimated the speed of Petraski's car at 15 to 20 miles per hour. In his reconstruction of the accident, Siegel assumed Petraski had a green left-turn arrow when she turned. He based that

assumption on Thedos' testimony that Petraski's car was stopped in the left-turn lane, the fact that there was another car stopped on Midlothian on the eastbound side, and the sequencing of the lights at the intersection. Siegel testified the traffic lights on northbound and southbound Central could not be green at the same time.

DECISION

I. Blood-Alcohol Evidence

The jury heard no evidence that Petraski was intoxicated or found to have an elevated blood-alcohol level. Prior to trial, the court granted the plaintiff's motion in limine barring any evidence that the plaintiff consumed alcohol, was intoxicated, or any other reference to alcohol.

Defendants sought to introduce expert witness James O'Donnell, who would have testified that a test of Petraski's blood following the accident revealed an elevated blood-alcohol level, and that Petraski's blood-alcohol level would have been above .08 at the time of the accident.

Defendants' offer of proof included the transcript of O'Donnell's discovery deposition. If called to testify, O'Donnell would have testified he is board-certified in pharmacology, has been qualified in the past as an expert in pharmacology, and has testified as an expert concerning blood-

alcohol test results and the effects of blood-alcohol test levels on individuals operating motor vehicles. He reviewed medical records, police reports, laboratory test results, and depositions of witnesses. Among the documents he reviewed was a Christ Hospital blood test result for Petraski that revealed a blood serum reading of 116 milligrams per deciliter, or .116 grams per deciliter. That test was conducted at 4 a.m. on May 28, 2001, approximately 1 1/2 hours after the accident.

O'Donnell would testify the blood serum level must be converted to a whole blood equivalent. He performed the conversion by lowering the blood serum results by 18%, according to statute or regulation. Using the 1.18 conversion factor, he would opine the serum blood alcohol level converted to whole blood equivalent would be approximately .095 or .096. O'Donnell testified the conversion factors generally range from 1.09 to 1.22. Nevertheless, he would opine that even if the conversion factor were as high as 1.25, Petraski's blood alcohol level would have exceeded .08, the statutory presumptive level of intoxication.

O'Donnell would testify he assumed Petraski's blood-alcohol level was in the elimination phase during the entire period after the accident. With that assumption, he performed retrograde extrapolation to obtain a blood-alcohol level at the time of the

5

accident, in effect, a backward estimate. He would testify that 22 to 24 units of alcohol would have to be added back, bringing Petraski's blood-alcohol level to the range of .116 to .120 at the time of the accident.

Plaintiff's counsel had an opportunity to cross-examine O'Donnell at the deposition. O'Donnell admitted he did not know when Petraski started and stopped drinking, what she drank or ate, or how much she drank. He recognized a number of factors could influence the conversion rate from blood serum to whole blood. He recognized Petraski could have been in the absorption phase for some of the alcohol. He agreed absorption rates vary between individuals, from 45 minutes to 3 hours.

O'Donnell opined that Petraski's blood-alcohol level would have affected her depth perception, peripheral vision, and ability to judge speeds. The threshold level of alcohol intoxication for someone to have these visual impairments would be .07 to .08. Petraski's blood-alcohol level would have affected her judgment of risk-taking because alcohol is a disinhibitor. O'Donnell was unable to render an opinion as to whether Petraski's blood-alcohol level caused or contributed to the accident. He said a blood alcohol level of .116, for "an overwhelming majority of the population," would impair a person's ability to operate a vehicle safely.

The trial court barred O'Donnell from testifying, finding the testimony too speculative to be admissible. The court also found the prejudicial effect of the testimony outweighed its probative value. The court granted plaintiff's motion in limine to bar any evidence to suggest Petraski consumed alcohol or was intoxicated.

Whether a motion in limine should be granted is subject to the trial court's discretion. Sher v. Deane H. Tank, Inc., 269 Ill. App. 3d 312, 317, 645 N.E.2d 1046 (1995). A reviewing court will not reverse a trial court's order allowing or excluding evidence in limine absent a clear showing of an abuse of that discretion. Sher, 269 Ill. App. 3d at 317. An abuse of discretion may be found where the trial court's ruling is arbitrary, unreasonable, or where no reasonable man would take the view adopted by the trial court. Hilgenberg v. Kazan, 305 Ill. App. 3d 197, 204, 711 N.E.2d 1160 (1999). The decision of whether to admit expert testimony also is subject to an abuse of discretion standard. Reed v. Jackson Park Hospital Foundation, 325 Ill. App. 3d 835, 842, 758 N.E.2d 868 (2001).

We first address the relevance of the proposed evidence. "Relevant evidence is evidence that has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

7

without the evidence.' " Voykin v. Estate of DeBoer, 192 Ill. 2d 49, 57, 733 N.E.2d 1275 (2000), quoting Fed. R. Evid. 401; People v. Monroe, 66 Ill. 2d 317, 322, 362 N.E.2d 295 (1977) (adopting Rule 401). "[T]estimony grounded in guess, surmise, or conjecture, not being regarded as proof of a fact, is irrelevant as it has no tendency to make the existence of a fact more or less probable." Modelski v. Navistar International Transportation Corp., 302 Ill. App. 3d 879, 886, 707 N.E.2d 239 (1999), citing Dyback v. Weber, 114 Ill. 2d 232, 244-45, 500 N.E.2d 8 (1986).

"Evidence of a plaintiff's intoxication is relevant to the extent that it affects the care that he takes for his own safety and is therefore admissible as a circumstance to be weighed by the trier of fact in its determination of the issue of due care." Marshall v. Osborn, 213 Ill. App. 3d 134, 140, 571 N.E.2d 492 (1991).

O'Donnell opined that Petraski's blood-alcohol level at the time of the accident was over .08, within the statutory presumption in the Illinois Vehicle Code for driving under the influence of alcohol. Subsection 11-501.2(b) of the Code applies to "any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the

influence of alcohol." 625 ILCS 5/11-501.2(b) (West 2000). A person whose alcohol concentration is .05 or less is presumed to not be under the influence of alcohol. 625 ILCS 5/11-501.2(b)(1) (West 2000). An alcohol concentration between .05 and .08 does not give rise to a presumption that the person was or was not under the influence of alcohol, but "such fact may be considered with other competent evidence in determining whether the person was under the influence of alcohol." 625 ILCS 5/11-501.2(b)(2) (West 2000). An alcohol concentration of .08 or more creates a presumption that the person was under the influence of alcohol. 625 ILCS 5/11-501.2(b)(3) (West 2000).

Plaintiff contends the blood-alcohol evidence was irrelevant to the issues in the case because the expert could not conclude Petraski suffered impairment. O'Donnell opined that alcohol had an effect on her functions, but he could not quantify the impairment, nor could he render an opinion as to whether alcohol caused or contributed to the accident. Plaintiff contends the testimony only would have fueled speculation as to whether alcohol affected Petraski's conduct, without any supporting evidence that the consumption caused impairment. There was no eyewitness evidence of Petraski's actual consumption of alcohol, erratic driving, or physical characteristics of intoxication.

The cases plaintiff cites in support of this contention hold

that evidence of alcohol consumption alone is inadmissible absent other supporting evidence of intoxication. See <u>Sullivan-Coughlin v. Palos Country Club</u>, 349 Ill. App. 3d 553, 561, 812 N.E.2d 496 (2004); <u>People v. Barham</u>, 337 Ill. App. 3d 1121, 1131-32, 788 N.E.2d 297 (2003); <u>Bodkin v. 5401 S.P., Inc.</u>, 329 Ill. App. 3d 620, 633-34, 768 N.E.2d 194 (2002). In those cases, however, the only evidence of intoxication was evidence of the parties' consumption of alcohol. Here, there was evidence that Petraski's blood-alcohol level was more than .08 at the time of the accident, supporting a presumption that she was under the influence.

We find the alcohol consumption evidence is relevant to the issue of Petraski's contributory negligence. The plaintiff's expert, Siegel, told the jury Petraski accelerated as she turned, that there would have been no accident if she had braked in the first two seconds. The jury could have used O'Donnell's testimony as an explanation for Petraski's conduct. It would have provided the jury with a reason why Petraski turned left in front of an on-coming emergency vehicle, green arrow or not. Instead, plaintiff's lawyer was left free to argue the defendants did not "give any reason" why Petraski would have turned in front of Thedos' car unless she had the green arrow. The defendants were not permitted to give a reason. See <u>Marshall</u>, 213 Ill. App.

10

1-06-2914

3d at 140-41.

Plaintiff also contends the evidence lacked the necessary foundation for reliability. Expert opinion testimony generally is admissible if the expert is qualified by knowledge, skill, experience, training, or education in a field with "at least a modicum of reliability," and the testimony would assist the jury in understanding the evidence. Turner v. Williams, 326 Ill. App. 3d 541, 552, 762 N.E.2d 70 (2001). However, an expert's opinion is only as valid as the reasons for the opinion. A party must lay a foundation sufficient to establish the reliability of the bases for the expert's opinion. Turner, 326 Ill. App. 3d at 552-53.

First, plaintiff says O'Donnell had no knowledge of the appropriate factors to perform an accurate conversion of blood serum to whole blood. Evidence of a person's blood-alcohol level may be introduced through whole blood test results or blood serum results converted into whole blood equivalents. People v. Thoman, 329 Ill. App. 3d 1216, 1218, 770 N.E.2d 228 (2002). Because a blood serum alcohol concentration test result can be anywhere from 12% to 20% higher than a whole blood alcohol concentration test result, blood serum results generally are converted by dividing by a corresponding factor between 1.12 and 1.20. Thoman, 329 Ill. App. 3d at 1218-19.

11

To perform the blood serum conversion, O'Donnell used the conversion factor in section 1286.40 of the Illinois Administrative Code, which provides: "[t]he blood serum or blood plasma alcohol concentration result will be divided by 1.18 to obtain a whole blood equivalent." 20 Ill. Adm. Code § 1286.40 (2000). That section is part of a set of regulations to implement the sections of the Illinois Vehicle Code that govern the offense of driving under the influence. 20 Ill. Adm. Code 1286.10 et seq. (2000).

Plaintiff says the defendants were required to prove that the blood-test procedures in the regulations, i.e., taking the sample in the presence of the arresting officer, were followed. See 20 Ill. Adm. Code § 1286.320 (2000). It appears plaintiff is not challenging the actual procedures used to collect Petraski's blood; rather, plaintiff argues O'Donnell's opinion was deficient because he was not aware of the procedures in the regulations. Those regulations are limited to the offense of driving under the influence. People v. Emrich, 113 Ill. 2d 343, 351, 498 N.E.2d 1140 (1986); People v. Murphy, 108 Ill. 2d 228, 236, 483 N.E.2d 1288 (1985). In a civil case, the ordinary standards of admissibility apply to evidence of a blood-alcohol test. Cuellar v. Hout, 168 Ill. App. 3d 416, 420-21, 522 N.E.2d 322 (1988); Burris v. Madison County, 154 Ill. App. 3d 1064, 1069, 507 N.E.2d

12

1-06-2914

1267 (1987).

As for O'Donnell's decision to use a conversion factor of 1.18, he testified that factors from 1.09 to 1.22 are generally accepted in the scientific community, and even using a 1.25 conversion factor, Petraski's blood-alcohol concentration would have been more than .08. See People v. Cortez, 361 Ill. App. 3d 456, 468-69, 837 N.E.2d 449 (2005) (1.18 conversion factor is generally accepted in scientific community, and defendant's blood-alcohol level would have measured over the statutory limit using the conversion factor most favorable to defendant (1.20)); People v. Stipp, 349 Ill. App. 3d 955, 958, 812 N.E.2d 574 (2004) (blood serum alcohol concentration test results are admissible where evidence is presented that converts the results into whole blood equivalents); People v. Menssen, 263 Ill. App. 3d 946, 953, 636 N.E.2d 1101 (1994) (simple mathematical calculation (rates from 12% to 20%) would show translating serum-alcohol results to blood-alcohol level still places defendant in a state of intoxication).

Next, the plaintiff contends O'Donnell's opinion was unreliable because he lacked knowledge of the factors that influence the blood serum conversion rate, such as the person's hydration and hemoglobin. Plaintiff also challenges the reliability of the calculation O'Donnell used to extrapolate

13

Petraski's blood-alcohol test results to the time of the accident. O'Donnell admitted he did not know when, what, or how much Petraski drank, and he assumed she was in the alcohol elimination phase during the entire period after the accident.

Since it is unlikely that a blood sample would be drawn at the exact time of the accident, the Vehicle Code permits extrapolation testimony estimating the alcohol level at a time earlier than the sample was drawn. People v. Johnigk, 111 Ill. App. 3d 941, 944, 444 N.E.2d 739 (1982).

The court in Cuellar v. Hout, 168 Ill. App. 3d 416, 522 N.E.2d 322 (1988), addressed issues similar to those raised by the plaintiff. In Cuellar, a blood-alcohol test performed on the plaintiff approximately two hours after the accident indicated a blood-alcohol level of .064. James O'Donnell, the same expert in this case, testified he performed retrograde extrapolation to determine plaintiff's blood-alcohol level at the time of the accident. Cuellar, 168 Ill. App. 3d at 419. O'Donnell used a .02-per-hour elimination rate based on plaintiff's elevated levels of certain enzymes. Assuming the .02-per-hour elimination rate, and assuming plaintiff was in the elimination phase rather than the absorptive phase during the entire period after the accident, O'Donnell opined that plaintiff's blood-alcohol level was .104 at the time of the accident. Cuellar, 168 Ill. App. 3d

14

at 419.

The plaintiff challenged the opinion as inadmissible, "essentially pointing out several facts tending to impeach that opinion." Cuellar, 168 Ill. App. 3d at 422. The plaintiff contended O'Donnell "was testifying about a 'hypothetical' or 'average' individual rather than the defendant [sic], and that he based his opinion on facts (that plaintiff had an empty stomach, was at rest, drank noncarbonated alcoholic beverages, and had not undergone trauma) not supported by the evidence." Cuellar, 168 Ill. App. 3d at 422-23. The court rejected those arguments, finding:

"Although there was some mention of 'average' persons in his testimony, O'Donnell did take into account facts specific to plaintiff (e.g., the elevated enzyme levels) in coming to his opinion. Also, some of the facts plaintiff cites as significant appear to affect primarily absorption and so would be of little relevance if the jury concluded that O'Donnell was correct in assuming plaintiff was in the elimination phase throughout the period between the accident and the drawing of blood. We believe that

15

1-06-2914

> all of the facts cited by plaintiff, which were presented and ably argued to the jury, go to the weight of O'Donnell's testimony and not its admissibility." Cuellar, 168 Ill. App. 3d at 423, citing Wilson v. Clark, 84 Ill. 2d 186, 417 N.E.2d 1322 (1981) (burden is on adverse party during cross-examination to elicit facts underlying expert opinion).

Similarly, in People v. Johnigk, 111 Ill. App. 3d 941, 444 N.E.2d 739 (1982), the defendant objected to opinion evidence using retrograde extrapolation based on a blood-alcohol level test. The court found the witness' expertise was well-established; he was merely asked to render an opinion based on his scientific knowledge and the results of a blood test. "Additional facts relating to the number of drinks consumed by defendant would go to the weight of his opinion evidence, not to its admissibility." Johnigk, 111 Ill. App. 3d at 943. In Rice v. Merchants National Bank, 213 Ill. App. 3d 790, 797, 572 N.E.2d 439 (1991), where the driver's blood-alcohol level was .12 nearly two hours after the accident, the court held retrograde extrapolation testimony would have been admissible but was not a foundational requirement for the test results to be admitted at trial.

16

O'Donnell's opinion was not, as plaintiff suggests, based entirely on speculation and conjecture. The factual basis for an expert's opinion generally does not affect his standing as an expert; it is for the jury to determine the weight of the opinion. Snelson v. Kamm, 204 Ill. 2d 1, 26-27, 787 N.E.2d 796 (2003). While opinions based on sheer speculation should be stricken as irrelevant, testimony based on "expert analysis of the known physical facts" is admissible. Modelski, 302 Ill. App. 3d at 886.

In this case, the blood-alcohol test result was the known physical fact, and O'Donnell would have testified regarding his expert analysis of that fact. By contrast, in the cases cited by the plaintiff, the experts had no factual basis for their opinions. See Modelski, 302 Ill. App. 3d at 886 (expert's opinions regarding a mechanical breakdown necessitating Modelski to dismount the tractor were based on sheer speculation and should have been stricken); Reed v. Jackson Park Hospital Foundation, 325 Ill. App. 3d 835, 844, 758 N.E.2d 868 (2001) (expert lacked experience and failed to indicate a reliable, credible foundation for opinions; opinions were based on nothing more than an educated guess).

We do not believe O'Donnell's assumption that Petraski's blood-alcohol level was in the elimination phase when her blood

17

was drawn is unwarranted. The blood draw took place at least one-and-one-half hours after the collision, most probably longer than that. Nowhere in O'Donnell's proposed testimony was he asked to offer an estimate of Petraski's blood-alcohol level if she were in the absorption phase at the time of the draw. Nor did the plaintiff offer any such evidence.

We agree with the court in Cuellar and hold the proposed expert testimony had a sufficient foundational basis to be reliable. Any questions about the facts upon which O'Donnell based his opinion would go to the weight of his opinion, to be challenged on cross-examination.

Once evidence is found to be relevant and reliable, the trial court must conduct a balancing test to determine admissibility. "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." People v. Bedoya, 325 Ill. App. 3d 926, 937, 758 N.E.2d 366 (2001). The danger of unfair prejudice " 'speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged.' " Bedoya, 325 Ill. App. 3d at 940, quoting Old Chief v. United States, 519 U.S. 172, 180, 136 L. Ed. 2d 574, 588, 117 S. Ct. 644, 651 (1997).

While evidence of intoxication is highly probative in a

18

negligence case, it also can be extremely prejudicial; therefore, more is required than evidence of alcohol consumption alone. Marshall v. Osborn, 213 Ill. App. 3d 134, 140, 571 N.E.2d 492 (1991). "It must be shown that the intoxication resulted in an impairment of mental or physical abilities and a corresponding diminution in the ability to act with ordinary care." Marshall, 213 Ill. App. 3d at 140.

Some courts have disallowed expert testimony using retrograde extrapolation to opine that a driver was under the influence at the time of the accident where there was no other evidence of intoxication. McGrew v. Pearlman, 304 Ill. App. 3d 697, 704, 710 N.E.2d 125 (1999); Reuter v. Korb, 248 Ill. App. 3d 142, 154-55, 616 N.E.2d 1363 (1993). In those cases, however, the expert testified the driver's blood-alcohol level at the time of the accident would have been less than .08. McGrew, 304 Ill. App. 3d at 704 (.05 to .06); Reuter, 248 Ill. App. 3d at 154 (.075). A blood-alcohol level between .05 to .08 does not give rise to a presumption that the person is under the influence of alcohol absent other evidence of intoxication. 625 ILCS 5/11-501.2(b)(2) (West 2000). Here, the expert would have testified Petraski's blood-alcohol level was over .08 at the time of the accident.

We believe expert testimony that Petraski's blood-alcohol

level created a presumption of intoxication was extremely probative of whether she was partially at fault for the accident. This is particularly true where the jury found her 25% negligent without hearing any evidence of alcohol consumption or intoxication.

As for the other side of the scale, we see insubstantial risk of unfair prejudice, that is, danger that the jury might misuse the evidence. We reverse and remand this case for a new trial based on the trial court's abuse of discretion in disallowing evidence of Petraski's blood-alcohol content. We next address the merits of two issues which might recur upon retrial.

II. Left-Turn Arrow and Code Violation Evidence

First, defendants object to the admission of Arnold Siegel's testimony regarding Petraski turning left on a green arrow.

Defendants initially objected to the testimony through a motion in limine, but did not renew their objection at the time of the testimony. A party must make a timely objection to preserve an issue for appellate review. Spurgeon v. Mruz, 358 Ill. App. 3d 358, 360, 832 N.E.2d 321 (2005). "A party who, prior to trial, unsuccessfully moves to bar certain evidence, must object again to the evidence when it is offered." Spurgeon, 358 Ill. App. 3d at 360-61. Following denial of a motion in

20

limine, if a party fails to make a contemporaneous objection at the time of the testimony, the right to raise the issue on appeal is waived. Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co., 163 Ill. 2d 498, 502, 645 N.E.2d 896 (1994). Because defendants failed to renew their objection at the time of the testimony, we find defendants waived consideration of the issue.

Second, defendants contend the evidence that Thedos failed to call in "code" before proceeding at a high rate of speed with emergency lights and sirens activated was not relevant to the issues in the case. We find the evidence was relevant for the jury's determination of whether Thedos was acting in a willful and wanton manner at the time of the collision and was properly admitted.

Because the trial court erred when it excluded evidence of Petraski's alcohol consumption, we reverse the court's judgment and remand this cause for a new trial.

Reversed and remanded.

CAHILL, P.J., and GARCIA, J., concur.