# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Citibank, N.A. v. McGladrey & Pullen, LLP*, 2011 IL App (1st) 102427

---

| | |
|---|---|
| Appellate Court Caption | CITIBANK, N.A., Successor by Merger to CITIBANK, F.S.B., Plaintiff-Appellant, v. McGLADREY AND PULLEN, LLP, an Iowa Limited Liability Partnership, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1–10–2427 |
| Filed | June 14, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a bank's action alleging that defendant accounting firm was negligent in conducting the audit the bank relied on in making a loan to a physician with a surgical practice who absconded with the proceeds of the $1.4 million loan, the trial court did not err in granting defendant's motion *in limine* to bar the testimony of a senior marketing director from a consulting firm the bank engaged to offer a professional opinion regarding defendant's audit as to the opinions of the consulting firm's health care specialists who examined the files of the surgical practice and in denying the bank's motion *in limine* to exclude any evidence of the bank's contributory negligence unrelated to the loan at issue, since the consulting firm's director admitted he was not qualified to read a patient's medical chart, his testimony would be "parroting" the opinions and conclusions of the firm's health care specialists that were beyond his ken, and the evidence relating to the bank's lending decisions with the physician and his practice other than the loan at issue was relevant to the issue of causation and reliance and was therefore admissible. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05–L–13222; the Hon. Daniel J. Lynch, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Quarles & Brady LLP, of Chicago (Leonard Shifflett, Thomas J. Magill, and Anthony P. Steinike, of counsel), for appellant. |
| | Williams & Connolly LLP, of Chicago (Edward J. Bennett, Charles Davant IV, and Thomas P. Windom, of counsel), for appellee. |
| Panel | JUSTICE KARNEZIS delivered the judgment of the court, with opinion. Presiding Justice Cunningham and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Citibank, N.A., successor by merger to Citibank, F.S.B., appeals the circuit court's judgment in favor of defendant McGladrey & Pullen, LLP, an Iowa limited liability partnership. Citibank contends on appeal that the circuit court's pretrial rulings on two motions *in limine* were in error and a new trial is required as a result of the error. We affirm the judgment of the circuit court.

¶ 2                              Background

¶ 3    In this case, Citibank seeks to recover money it loaned to Dr. Mark S. Weinberger, an ear, nose and throat (ENT) surgeon, who absconded to Europe with the proceeds of a $1.4 million term loan from Citibank.[1] Citibank seeks to recover its money by suing McGladrey for its negligent audit of Dr. Weinberger's surgical practice, Subspecialty Centers of America, LLC (SCA). Citibank claims that it relied on McGladrey's audit in making the $1.4 million term loan to SCA.

---

[1]Dr. Weinberger was subsequently located residing in a tent in the Italian Alps and was brought back to the United States in 2010. Hundreds of malpractice suits were filed against him and federal prosecutors charged him with multiple counts of health care fraud.

¶4 McGladrey conducted a financial audit of SCA for the year ending December 31, 2003, and issued its audit report in March 2004. The audit report indicated that SCA's "balance sheet presents fairly in all material respects to the financial position of SCA in conformity with generally accepted auditing standards." Citibank received the audit report and in June 2004, made a $1.4 million term loan to SCA. The term loan was a modification of a prior term loan Citibank had made to SCA. Prior to 2004, Citibank had four outstanding loans to SCA; (1) a mortgage loan for its diagnostic surgery center; (2) a mortgage loan for its office condominium; (3) a revolving line of credit; and (4) a term loan. The 2004 term loan was an increase and an extension of the prior term loan.

¶5 During discovery, Citibank disclosed three expert witnesses: Edward A. Bartko, an accountant; Dr. Robert Kern, an ENT doctor; and, Dr. Robert Naclerio, an ENT doctor.

¶6 Bartko is a senior managing director in the corporate finance department of FTI Consulting, Inc. (FTI), and has an extensive auditing background. His expert credentials are not at issue. Bartko was engaged by Citibank to offer a professional opinion regarding McGladrey's audit of SCA. According to Bartko's "Expert Report and Disclosure," he opined that McGladrey's audit was deficient and "did not comply with the general standards, standards of field work and standards of reporting within the body of generally accepted auditing standards." Specifically, according to Bartko, McGladrey's audit was deficient because McGladrey did not use health care specialists who possessed the expertise to analyze the medical files of SCA's patients, and who would have ultimately uncovered any medical fraud. Bartko's report indicated that FTI's team of health care specialists uncovered numerous red flags in SCA's patient files, which should have been discovered by McGladrey's audit. Bartko's report only refers to FTI's health care specialists as "two registered nurses" (one of which is a "Certified Coding Specialist" and "Certified Professional Coder") and "an individual who leads FTI's Healthcare Compliance Consulting Services practice."

¶7 McGladrey filed a motion *in limine* to "Strike Certain Expert Testimony," which is one of the two motions *in limine* at issue in this appeal. The motion sought to preclude Bartko from testifying as to the opinions and conclusions of FTI's health care specialists, because the specialists were never disclosed during discovery and because Bartko was not qualified to testify to their findings. McGladrey noted in the motion that Bartko admitted during his deposition that the opinions of the health care specialists were the specialists' opinion and not his opinions and that he was not qualified to read or interpret a patient's medical records. The circuit court granted the motion to the extent that Bartko could testify that he would have engaged the use of health care specialists, but he could not testify as to the specific opinions and conclusions of FTI's health care specialists.

¶8 Prior to trial, the circuit court limited Citibank's claims of damages to the 2004 term loan because Citibank had made the other outstanding loans to SCA prior to receiving the McGladrey audit report.

¶9 Citibank subsequently filed a motion *in limine* to exclude any evidence of Citibank's alleged contributory negligence unrelated to its term loan to SCA, which the circuit court denied. This motion is the second of the two motions *in limine* at issue in this appeal.

¶ 10    The case proceeded to trial, with the jury finding in favor of McGladrey. Citibank appeals the circuit court's pretrial rulings concerning the above two motions *in limine*.

¶ 11                                    Analysis

¶ 12    On appeal, Citibank first contends the circuit court's order granting McGladrey's motion *in limine* to preclude Bartko from testifying as to the opinions and conclusions of FTI's health care specialists was in error.

¶ 13    Evidentiary motions, such as motions *in limine*, are within the trial court's discretion and are reviewed under an abuse of discretion standard. *Petraski v. Thedos*, 382 Ill. App. 3d 22, 26 (2008). The trial court abuses its discretion when the ruling is arbitrary or unreasonable or no reasonable person would agree with the position taken by the court. *Petraski*, 382 Ill. App. 3d at 26-27. The decision of whether to admit expert testimony is also subject to an abuse of discretion standard. *Petraski*, 382 Ill. App. 3d at 27.

¶ 14    Specifically, Citibank argues that Bartko should have been permitted to testify as to the specific opinions and conclusions of FTI's health care specialists, citing to *Walker v. Soo Line R.R. Co.*, 208 F.3d 581 (7th Cir. 2000), which held that the leader of a clinical medical team need not be qualified as an expert in every individual discipline encompassed by the team in order to testify as to the team's conclusions. *Walker*, 208 F.3d at 589. Citibank argues that although Bartko was not qualified to interpret a patient's medical records, he should have nevertheless been permitted to testify as to the health care specialists' opinions and conclusions that medical fraud was prevalent and obvious in many of SCA's patient files.

¶ 15    McGladrey responds that although Federal Rule of Evidence 703 permits an expert witness to rely on and explain to the jury certain inadmissible evidence, an expert witness "is not permitted to be the mouthpiece of [an expert] in a different specialty" (quoting *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002)).

¶ 16    Federal Rule of Evidence 703, which was adopted by Illinois courts (see *Wilson v. Clark*, 84 Ill. 2d 186, 196 (1981)), provides:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703 (amended 2000).

¶ 17    In *Walker*, upon which Citibank relies, the district court barred a doctor who was an expert in the area of electrical trauma from testifying as to the opinions of other doctors on the "team" of medical professionals who evaluated the plaintiff's claim that an electrical injury was the cause of his post-traumatic stress disorder. The Seventh Circuit Court of Appeals reversed, finding that medical professionals "have long been expected to rely on the

-4-

opinions of other medical professionals in forming their opinions." *Walker*, 208 F.3d at 588. The court reasoned that the purpose of the team approach to medical diagnosis was to ensure that all relevant disciplines worked together for the good of the patient; therefore, the doctor, as the "team" leader, could rely on the expert opinions of other doctors on the team in reaching her expert opinion. *Walker*, 208 F.3d at 589.

¶ 18    In *Dura Automotive Systems*, upon which McGladrey relies, the Seventh Circuit Court of Appeals considered whether and to what degree an expert is permitted to use assistants or other experts in formulating his expert opinion, without those assistants or other experts testifying to their own opinions or conclusions. The plaintiff's expert, a hydrologist, was disqualified by the district court because the expert relied on the conclusions of several professional groundwater-flow modelers who opined that the defendant's manufacturing plant released harmful chemicals into the groundwater, which contaminated a nearby well field. *Dura Automotive Systems*, 285 F.3d at 611. The hydrologist expert had admitted during his deposition that he was not an expert in mathematical models of groundwater flow. The Seventh Circuit affirmed the district court, finding that an expert may not rely on or testify to another expert's opinions or conclusions when it concerns matters beyond the expert's ken. *Dura Automotive Systems*, 285 F.3d at 614. The court noted that "[a] scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science." *Dura Automotive Systems*, 285 F.3d at 614. The court also cautioned against one expert merely "parroting the opinion" of another expert in another discipline. *Dura Automotive Systems*, 285 F.3d at 613.

¶ 19    Here, we find that this case is more similar to *Dura Automotive Systems* than *Walker* and compels a similar result. As in *Dura Automotive Systems*, Bartko was attempting to testify to the opinions and conclusions of FTI's health care specialists who read and interpreted many of CSA's patients' medical charts, even though Bartko admitted he was not qualified to read a patient's medical chart. In other words, Bartko would be testifying to or "parroting" those opinions and conclusions that were beyond his ken, which the Seventh Circuit held was improper.

¶ 20    We find *Walker* distinguishable because it involved a team of doctors, all working together to diagnose the cause of the plaintiff's post-traumatic stress disorder. Here, all that Bartko's "Expert Report and Disclosure" noted about the health care specialists was that two were registered nurses and the third was "an individual who leads FTI's Healthcare Compliance Consulting Services practice." This is certainly not a team of medical professionals that can be expected to rely on the opinions of one another, as in *Walker*.

¶ 21    We take this opportunity to acknowledge that Illinois state courts are not bound to follow the decisions of the federal district courts and are also not bound by the Federal Rules of Evidence. *Reichert v. Board of Fire & Police Commissioners*, 388 Ill. App. 3d 834, 845 (2009). Nevertheless, although the Seventh Circuit's opinion in *Dura Automotive Systems* is only persuasive authority, we find it sound and well reasoned and choose to follow it.

¶ 22	Additionally, we note that Federal Rule of Evidence 703 was amended in 2000.[2] The first two sentences of the amended rule are the same as the prior version of the rule. The amended version further provides that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703 (amended 2000).[3] The advisory committee notes state that the amendment "provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert." Fed. R. Evid. 703, Advisory Committee Notes. This presumption serves as an additional reason why Bartko was properly precluded from testifying to the opinions and conclusions of FTI's health care specialists. Therefore, we find the circuit court's order precluding Bartko from testifying to the opinions and conclusions of FTI's health care specialists was not an abuse of discretion.

¶ 23	Next, Citibank contends the circuit court's order denying Citibank's motion *in limine* to exclude any evidence of Citibank's alleged contributory negligence unrelated to the 2004 term loan to SCA was in error. Citibank argues that it was improper for the court to allow testimony regarding its lending decisions to SCA on all of its loans other than the 2004 term loan.

¶ 24	In denying Citibank's motion *in limine*, the circuit court determined that any evidence relating to Citibank's lending decisions with SCA was relevant to the issue of causation and reliance and was therefore admissible.

¶ 25	Citibank relies on *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 224 Ill. App. 3d 559 (1991), for support. In *Congregation of the Passion*, the plaintiff sued the defendant accounting firm for its negligent audit of one of its investment advisers, Cranford Newell. Prior to trial, the plaintiff filed a motion *in limine* to exclude any reference to any of its investment accounts other than the accounts managed by Newell. The circuit court granted the motion and this court affirmed on appeal. This court determined that the evidence was properly excluded because it did not bear on the specific issues under consideration, which concerned only the Newell accounts. *Congregation of the Passion*, 224 Ill. App. 3d at 578. This court further stated that the fact that the plaintiff may have had problems with other investment advisors had no relevance and was not material to the plaintiff's claims that the defendant negligently failed to properly value the Newell investments. *Congregation of the Passion*, 224 Ill. App. 3d at 579.

¶ 26	Citibank argues that, similar to *Congregation of the Passion*, the loans it made to SCA other than the term loan were not relevant in light of the court's order limiting Citibank's

_____

[2]The parties fail to note in their briefs that the rule has been amended and Citibank quotes the prior version of the rule in its brief to this court.

[3]No Illinois court has specifically adopted the amended version. See *People v. Johnson*, 406 Ill. App. 3d 805, 817 n.2 (2010).

damages to the 2004 term loan.

¶ 27 Here, however, all of the loans Citibank made to SCA were relevant to the issue of whether Citibank relied on McGladrey's audit in making the 2004 term loan. Citibank's conduct regarding its prior loans to SCA was relevant to shed light on whether the McGladrey audit caused Citibank to make the 2004 term loan. Unlike in *Congregation of the Passion*, Citibank's motion *in limine* did not go beyond the specific issues under consideration, namely, Citibank's lending relationship with SCA. Although the circuit court limited Citibank's damages to the 2004 term loan, the issue of whether Citibank relied on McGladrey's audit in making the 2004 term loan involved Citibank's entire lending relationship with SCA. We find no abuse of discretion in the circuit court's denial of Citibank's motion *in limine* to exclude any evidence of Citibank's alleged contributory negligence unrelated to the 2004 term loan to SCA.

¶ 28 Lastly, Citibank argues that the accumulation of the circuit court's erroneous rulings prejudiced Citibank and requires a new trial. However, we find no error in the court's rulings. Without error, there can be no accumulation of error, and no new trial is required.

¶ 29 Accordingly, we affirm the judgment of the circuit court.

¶ 30 Affirmed.